LINDA DRISCOLL *v.* GENERAL NUTRITION
CORPORATION ET AL.
(SC 16090)

Borden, Norcott, Katz, Palmer and Peters, Js.

Argued December 7, 1999—officially released February 29, 2000

*Robert J. Williams, Jr.*, for the appellant (plaintiff).

*Kevin M. Brill*, pro hac vice, with whom was *Philip J. O'Connor*, for the appellee (named defendant).

*Opinion*

PETERS, J. The sole issue in this appeal, on certification from the United States District Court for the District of Connecticut pursuant to General Statutes § 51-199a,[1] is whether the exclusivity provision of the Workers' Compensation Act bars an employee from pursuing a tort claim for damages for emotional distress resulting from a physical and sexual assault that occurred during and in the course of her employment. We conclude that General Statutes § 31-275 (16) (B) (ii),[2] when read in light of the facts and circumstances of this case, the policy of exclusivity set forth in General Statutes § 31-284 (a),[3] the definition of "personal injury" contained

---

[1] General Statutes § 51-199a (b) provides in relevant part: "The Supreme Court may answer questions of law certified to it by . . . a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state." See also Practice Book § 82-1.

[2] General Statutes § 31-275 (16) (B) provides in relevant part: " 'Personal injury' or 'injury' shall not be construed to include . . .

"(ii) A mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease . . . ."

[3] General Statutes § 31-284 (a) provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . ."

in § 31-275 (16) (A),[4] and the legislative history of the enactment of § 31-275 (16) (B) (ii), limits the plaintiff's recovery to the receipt of workers' compensation benefits.

## I

## PROCEDURAL HISTORY

The plaintiff, Linda Driscoll, brought this tort action[5] seeking damages for negligence and negligent infliction of emotional distress from her employer, the named defendant, General Nutrition Corporation.[6] Relying on the diversity of citizenship of the parties, the defendant removed this action to the United States District Court for the District of Connecticut. See 28 U.S.C. §§ 1441 and 1446.[7] The defendant then moved for summary judg-

---

[4] General Statutes § 31-275 (16) (A) provides: " 'Personal injury' or 'injury' includes, in addition to accidental injury which may be definitely located as to the time when and the place where the accident occurred, an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease."

[5] The plaintiff also applied for workers' compensation benefits as a result of the incident in question.

[6] The plaintiff's complaint also included two counts seeking recovery from Frank Troiano, Anthony Troiano, Jr., James Viola, Hazard Avenue Associates, and Hazard Avenue Limited Partnership, who were the owners of the premises occupied by her employer. The plaintiff's rights against these parties are not at issue in this certified appeal. In this opinion, references to the defendant are to General Nutrition Corporation.

[7] Title 28 of the United States Code, § 1441, provides in relevant part: "(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . ."

Title 28 of the United States Code, § 1446, provides in relevant part: "(a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action. . . ."

ment in light of the exclusivity provision of § 31-284 (a). See footnote 3 of this opinion.

Pursuant to *Erie Railroad Co.* v. *Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), because the jurisdiction of the District Court was based on diversity of citizenship, that court was required to adjudicate the claims of the parties in accordance with the law of Connecticut. The District Court concluded that the applicable authorities in this state provided insufficient guidance to enable it to rule definitively on the defendant's motion for summary judgment. That court, therefore, denied the defendant's motion for summary judgment without prejudice and certified the following question to this court: "Is a sexual assault where the victim is forced to perform fellatio on her assailant a 'physical injury' within the meaning of . . . § 31-275 (16) (B) (ii) such that any claim for emotional injuries resulting from the sexual assault [is] governed by the Connecticut Worker[s'] Compensation Act?" This court accepted the question of law as framed by the District Court and we now answer it in the affirmative.

In an appeal in response to a question certified by a federal court, this court relies on the finding of facts from the certifying court. Practice Book § 82-3. In this case, the District Court made the following findings.

The defendant owned and operated a store in Enfield. On January 19, 1996, the plaintiff began working as a sales clerk for the defendant at this store. Gloria Westover, the store manager, also was working at the store that day. That morning, Gregory Popielarczyk entered the store on four occasions within a period of one to one and one-half hours. During his fourth visit to the store, Popielarczyk seized the plaintiff by the neck and physically forced her and Westover into separate rooms located in the rear of the store. With the women out of the way, he ransacked the cash register. He then

returned to the rear of the store and sexually assaulted the plaintiff by forcing her to perform oral sex on him.

In its motion for summary judgment, the defendant claimed that the plaintiff's tort action was barred by § 31-284 (a) because, under that statutory provision, the defendant was "not . . . liable for any action for damages on account of personal injury sustained by [the plaintiff] arising out of and in the course of [her] employment . . . ." General Statutes § 31-284 (a). Our Workers' Compensation Act includes in the definition of the term "personal injury" an "accidental injury which may be definitely located as to the time when and the place where the accident occurred . . . ." General Statutes § 31-275 (16) (A). That act, however, excludes from this definition "mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease . . . ." General Statutes § 31-275 (16) (B) (ii).

In response to the defendant's motion, the plaintiff focused her claim for relief on the emotional distress she had suffered as a result of Popielarczyk's assault. The District Court's certified question assumed that the plaintiff's claim for relief was limited to the recovery of damages for emotional injuries only.[8]

[8] We note that, in the plaintiff's complaint, she alleges that she has suffered both physical and emotional injuries. Paragraph ten of her complaint provides: "As a result of the above mentioned sexual assault [by Popielarczyk] the plaintiff, Linda Driscoll, suffered various physical and psychological injuries to her person including but not limited to fear, stress, headaches, phobias, nervousness, tension, irritability, fatigue, and depression. As a result of said injuries, the plaintiff, Linda Driscoll, has suffered and continues to suffer from physical and emotional pain." Paragraph twelve refers to the plaintiff's need to recover past and future expenses for "medical treatment and testing, psychological treatment, drug rehabilitation, hospital bills, [and] medicines . . . ." Paragraph thirteen alleges that "the ability of the plaintiff to enjoy life's pleasures has and continues to be physically and emotionally restricted."

II

## APPLICABLE PRINCIPLES OF CONNECTICUT LAW

The issue before us is whether a person who alleges that she has been assaulted physically as well as emotionally can avoid the statutory rule of exclusivity by expressly limiting her tort action to a claim for recovery only for emotional distress and emotional injury. The plaintiff's complaint, however, alleges that she has "suffered various physical and psychological injuries . . . ." See footnote 8 of this opinion. It would be difficult to conjure up a case in which the involuntary act of fellatio would not be a physical as well as an emotional assault.[9] We must decide, therefore, whether the applicable provisions in our workers' compensation law; General Statutes §§ 31-284 (a) and 31-275 (16) (A) and (B) (ii); consider a person so situated to have suffered multiple injuries that may be unbundled for pleading purposes, or to have suffered only one injury, with physical as well as mental components, which, because of the mandate of § 31-275 (B) (ii), may be pursued only through a claim for workers' compensation benefits.

Our Workers' Compensation Act indisputably is a remedial statute that should be construed generously to accomplish its purpose. See, e.g., *Green* v. *General Dynamics Corp.*, 245 Conn. 66, 71, 712 A.2d 938 (1998); *Herman* v. *Sherwood Industries, Inc.*, 244 Conn. 502, 511, 710 A.2d 1338 (1998); *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 447, 705 A.2d 1012 (1997). Section 31-284 (a), the exclusivity provision in the act, manifests a legislative policy decision that a limitation on remedies under tort law is an appropriate trade-off for the

---

[9] On the present record, we need not decide whether the assailant's conduct in forcibly removing the plaintiff to the rear of the defendant's store was so connected to the subsequent sexual assault as to demonstrate a continuous course of conduct that included a physical injury.

benefits provided by workers' compensation. That trade-off is part and parcel of the remedial purpose of the act in its entirety. Accordingly, our case law on workers' compensation exclusivity reflects the proposition that "these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 97, 491 A.2d 368 (1985). "The purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering [its] purposes." Id. "In appeals arising under workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act." *Doe* v. *Stamford*, 241 Conn. 692, 698, 699 A.2d 52 (1997), citing *Hansen* v. *Gordon*, 221 Conn. 29, 32, 602 A.2d 560 (1992); see also *Panaro* v. *Electrolux Corp.*, 208 Conn. 589, 604, 545 A.2d 1086 (1988).

## III

## STATUTORY CONSTRUCTION

Our resolution of the proper construction of § 31-275 (16) (A) and (B) (ii) is guided by well established principles. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Id.; *Carpenteri-Waddington, Inc.* v. *Commis-*

*sioner of Revenue Services*, 231 Conn. 355, 362, 650 A.2d 147 (1994); *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 755–56, 601 A.2d 1005 (1992). . . . *Bortner* v. *Woodbridge*, 250 Conn. 241, 258–59, 736 A.2d 104 (1999)." (Internal quotation marks omitted.) *Burke* v. *Fleet National Bank*, 252 Conn. 1, 11, 742 A.2d 293 (2000).

In this case, the word "personal injury," as used in the relevant statutes, certainly is a term broad enough to include forcible fellatio. Further support for such a construction may be found in the legislative history of that provision when it was enacted in 1993. Before that provision was enacted, § 31-275 (16) (A) defined the term "personal injury" to include, "in addition to accidental injury which may be definitely located as to the time when and the place where the accident occurred, an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease." General Statutes (Rev. to 1993) § 31-275 (16) (A). Only the definition of "personal injury" as "accidental injury" is relevant in this case.[10]

The text of subdivision (16) (B) (ii) of § 31-275 does not purport to repeal subdivision (16) (A) in its entirety. In relevant part, the portion of the 1993 public act that eventually was codified as § 31-275 (16) (B) (ii) provides that " '[p]ersonal injury' or 'injury' shall not be construed to include . . . (ii) A mental or emotional impairment, *unless such impairment arises from a physical injury or occupational disease* . . . ." (Emphasis added.) Public Acts 1993, No. 93-228, § 1.

In the course of the legislative debates concerning the enactment of the bill that subsequently was codified as § 31-275 (16) (B) (ii), the members of the House of

_____

[10] The plaintiff's complaint in this case contains no allegation that she is suffering either from repetitive trauma or from an occupational disease.

Representatives discussed the meaning of this provision. Representative Michael P. Lawlor was the proponent of the bill. In the course of debate, Representative Lawlor was asked whether the bill would preclude workers' compensation benefits for a correction officer who was able to subdue a prisoner who had tried to assault her sexually, and thus had suffered no bodily harm, but who subsequently suffered emotional distress. 36 H.R. Proc., Pt. 18, 1993 Sess., pp. 6153–54. He replied that, because the correction officer had been "touched and physically assaulted . . . that is an injury and she may be compensated . . . ." Id., p. 6155. This legislative history strongly supports the defendant's claim that, under the facts of this case, the exclusivity rule applies.

## IV

## THE PLAINTIFF'S ARGUMENTS IN FAVOR OF A COMMON-LAW TORT ACTION

The language of § 31-275 (16) (B) (ii), read in the light of its legislative history, strongly supports the defendant's claim that, because the plaintiff's emotional impairment "arises from a physical injury," she is entitled only to workers' compensation benefits. Nonetheless, the plaintiff makes four arguments in support of her claim that she is entitled to pursue a common-law tort action against the defendant. We find none of these arguments persuasive.

## A

The plaintiff first argues that the term "physical injury" is an undefined term under the Workers' Compensation Act, and, therefore, is a term that requires judicial definition. The plaintiff's claim cannot be sustained in light of the definition contained in § 31-275 (16) (A). The facts alleged in the plaintiff's complaint; see footnote 8 of this opinion; readily fall within the

following language of that provision: " 'Personal injury' or 'injury' includes . . . [an] accidental injury which may be definitely located as to the time when and the place where the accident occurred . . . ." General Statutes § 31-275 (16) (A). As the defendant aptly observes, this provision focuses on the fact of injury, and not on its nature. The physical injury to the plaintiff was the sexual assault perpetrated by Popielarczyk. Except as specified, § 31-275 (16) (B) (ii) does not purport to override the definition contained in § 31-275 (16) (A). As previously noted, § 31-275 (16) (B) (ii) excludes from the term "personal injury" or "injury" only "[a] mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease . . . ." The term cannot, therefore, be said to be undefined statutorily, and in need of judicial definition.

## B

We find equally unpersuasive the plaintiff's second argument, namely, that § 31-275 (16) (B) (ii) compels a construction of "physical injury" as an injury that is manifested by "physical trauma." The plaintiff asks us to define "physical trauma" so as to exclude minor physical symptoms, except in cases in which such physical symptoms "rise to the level of a heart attack or exposure to a contagious disease." Even if we were to agree with the proposition that forcible fellatio is not, per se, a "physical trauma," which we do not, our case law is to the contrary. The plaintiff's proposed definition is consistent with the specific holding of *Doe* v. *Stamford*, supra, 241 Conn. 700, wherein we held that, "[f]or purposes of workers' compensation law, the [physical] injury suffered by the claimant is the exposure to potentially fatal contagious diseases. That injury is no less real or cognizable because it was not attended by puncture or abrasion." On a broader level, however, *Doe* reflects our judicial philosophy of construing access to workers' compensation benefits as broadly as the act

will permit. *Doe* decided a claim for workers' compensation, not a claim for common-law tort damages. Moreover, *Doe* relied on the definition of personal injury in § 31-275 (16) (A), a definition the relevance of which the plaintiff in this case has disavowed.

*Biasetti* v. *Stamford*, 250 Conn. 65, 735 A.2d 321 (1999), is not to the contrary. In *Biasetti*, we decided that, under the facts of that case, posttraumatic stress disorder, a mental impairment, was not compensable under § 31-275 (16) (B) (ii) of the workers' compensation act. The dispositive facts were that "the [plaintiff], while working for the [defendant] in his capacity as a police officer, was involved in a high-speed pursuit. The pursuit came to an end in the [t]own of Fairfield, Connecticut, and a gun battle [ensued]." (Internal quotation marks omitted.) Id., 68. Although the plaintiff was not wounded in the gun battle, he subsequently "suffered from headaches, upset stomach, a pressure sensation in his right calf and upper leg, and [posttraumatic stress disorder]." Id.

We concluded in *Biasetti* that, although the plaintiff's posttraumatic stress disorder was, for a police officer, an occupational disease, as that term is defined in § 31-275 (15), his eligibility for workers' compensation benefits could not survive the enactment of § 31-275 (16) (B) (ii). Id., 73. By enacting § 31-275 (16) (B) (ii), the legislature had manifested its intent to exclude from workers' compensation coverage "any occupational disease that does not have a physical component." Id., 75. We found dispositive the fact that § 31-275 (16) (B) (ii) "includes within the definition of 'personal injury' an emotional impairment that *arises from or is caused by* a physical injury or occupational disease." (Emphasis altered.) Id., 79. That definition, we held, does not "extend coverage to an emotional impairment which itself is an occupational disease. To conclude otherwise

would be to ignore the causation requirement encompassed within the term 'arises.' " Id.

The facts of this case distinguish it from *Biasetti*. The plaintiff herein was, at the very least, physically manhandled by Popielarczyk. When he forced her to perform fellatio, he subjected her to an invasive physical contact. The plaintiff's emotional distress, as alleged in her own complaint, arose from or was caused by a physical injury. See footnote 8 of this opinion. Therefore, unlike the plaintiff in *Biasetti*, the plaintiff in the present case cannot escape from workers' compensation exclusivity.

C

In addition to these textual arguments, the plaintiff argues that Black's Law Dictionary supports her definition of "physical injury" as "physical trauma." Black's Law Dictionary (6th Ed. 1990) defines "physical injury" as "bodily harm or hurt, excluding mental distress, fright or emotional disturbance." This argument, too, is unavailing. First, a dictionary definition cannot displace a legislative definition. Second, even if we were to overlook this principle of appellate adjudication, the definition contained in Black's Law Dictionary, by its own terms, lends little support for the plaintiff's assertion that "physical injury" excludes "minor physical symptoms that do not rise to the level of a heart attack or exposure to a contagious disease."

D

Fourth, in the plaintiff's reply brief, she argues, for the first time, that she is entitled to pursue her tort action because workers' compensation "neither adequately recompenses [her] for the injuries she has suffered nor deters [employer] conduct with regard to how [employers] safeguard their employees." Procedurally, it is improper to raise a new argument in a reply brief,

because doing so deprives the opposing party of the opportunity to respond in writing. Substantively, it is an essential part of the workers' compensation bargain that an employee, even one who has suffered such an offensive injury, relinquishes his or her potentially large common-law tort damages in exchange for relatively quick and certain compensation. See *Mingachos* v. *CBS, Inc.*, supra, 196 Conn. 97.

V

CONCLUSION

In conclusion, we hold that none of the plaintiff's arguments can overcome the persuasive power of the legislative history of the enactment of § 31-275 (16) (B) (ii). As previously noted, the proponent of the legislation, Representative Lawlor, expressly stated that mental anguish resulting from a sexual assault "would be compensable under workers' compensation." 36 H.R. Proc., supra, p. 6215.

Representative Lawlor's subsequent statement that a sexual assault is a "physical injury" for the purposes of workers' compensation; id., p. 6155; gives us cogent guidance for the proper construction of § 31-275 (16) (B) (ii). Under well established principles of statutory construction, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Cotto* v. *United Technologies Corp.*, 251 Conn. 1, 6, 738 A.2d 623 (1999), quoting *General Motors Corp.* v. *Dohmann*, 247 Conn. 274, 286, 722 A.2d (1998); *Coelho* v. *ITT Hartford*, 251 Conn. 106, 110, 752 A.2d 1063 (1999). Moreover, we

attach special significance to a legislator's statement describing the intended applicability of a statute if that statement is made by the proponent of the underlying bill. *State* v. *Parra*, 251 Conn. 617, 630, 741 A.2d 902 (1999). Representative Lawlor's statement describes a factual situation that is functionally identical to the facts recited by the District Court in its request for certification.

The answer to the certified question is: Yes.

No costs shall be taxed in this court to either party.

In this opinion the other justices concurred.