[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT BACKGROUND
This ease arises out of a work-related injury that occurred on March 12, 1997, at Sterling Engineering Corporation ("Sterling"). The plaintiff, Emil Sorban ("Sorban"), filed a claim under the Connecticut Workers' Compensation Act, General Statutes Chapter 568 (the "Act"). On March 5, 1999, the plaintiff filed a complaint against his employer CT Page 6730 Sterling. Specifically, the plaintiff alleges that Sterling engaged in "willful, wanton, intentional and serious misconduct" as follows:
1. Sterling maintained, directed and required the plaintiff and other employees to operate and use the Froriep Vertical Turrett Lathe ("machine") when Sterling knew or should have known the machine was not properly guarded or did not contain safety devices to prevent parts from being thrown from the machine during its operation. (Complaint, February 8, 1999 [Complaint], ¶ 8(a).)
2. Sterling failed to provide guards or other safety devices for the machine to prevent the operator from incurring injuries from flying parts during the operation of the machine. (Complaint, ¶ 8(b).)
3. Sterling required the plaintiff and other employees to operate and use the machine without proper guards that involved the lack of control of the tool head during positioning. . . . (Complaint, ¶ 8(c).)
4. Sterling knew or should have known guards, safety devices and modifications would be required to prevent operators from being injured from thrown parts. (Complaint, ¶ 8(d).)
5. Sterling maintained, directed and required the plaintiff and other employees to use the machine without proper guards . . . in violation of OSHA regulations, custom and practice. (Complaint, ¶ 8(e).)
6. Sterling maintained, directed and required the plaintiff and other employees to perform work which was patently unsafe. (Complaint, ¶ 8(f).)
7. Sterling knew or should have known that one or more of their employees had previously been seriously injured during operation of the machine by parts thrown at the operator and Sterling still maintained, directed and required the plaintiff and other employees to use and operate the machine. (Complaint, ¶ 8(g).)
8. Sterling knew or should have known that modification for the machine such as a Traverse permissive control were on the market at a reasonable price which would have made the operation being performed by the plaintiff and other employees safe, but declined to purchase it. (Complaint, ¶ 8(h).)
9. Sterling failed to have an adequate training program for machine operators. (Complaint, ¶ 8(i).)
10. Sterling failed to effectively implement company policy regarding CT Page 6731 operation of the machine. (Complaint, ¶ 8(j).)
The plaintiff further alleges that Sterling knew or should have known that these acts were substantially certain to cause parts to fly and be thrown from the machine and cause injuries as suffered by the plaintiff. (Complaint, ¶ 9.) The plaintiff contends that his claim falls within the exception to the exclusivity of the Act enunciated in Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 639 A.2d 507 (1994) ("Suarez I"), and 242 Conn. 255, 698 A.2d 838 (1997) ("Suarez II").
On September 17, 2001, Sterling moved for summary judgment on the ground that the plaintiffs claims are barred by the exclusivity provision of the Act because the plaintiff has not pled any facts or put forth any evidence to establish intentional misconduct on Sterling's part under the actual intent standard or the substantial certainty standard as set out in the exception to the exclusivity provision of the Act. In support of its motion, Sterling filed a memorandum of law, depositions of Sorban and plaintiffs expert, Irving U. Ojalvo ("Ojalvo"), as well as, affidavits of John Lavieri, President of Sterling; Thomas Gallegos, Workers' Compensation Consultant; Salvatore Dell'Agli, process engineer at Sterling; William Roorda, Professional Engineer, and Gary Zweifel ("Zweifel"), Human Resources Manager and Assistant Safety Director at Sterling.
On November 13, 2001, the plaintiff filed a memorandum in opposition to Sterling's motion for summary judgment. In support of his objection, the plaintiff submits his own affidavit and an affidavit from Ojalvo. He also submitted the deposition of Zweifel, as well as, portions of an OHSA citation; a maintenance manual for the machine; maintenance records for the machine and Sterling's employee handbook. Sterling filed a reply memorandum of law to the plaintiffs objection on March 12, 2002. The court heard oral argument on March 18, 2002. On March 20, 2002, Sterling filed a supplemental memorandum in support of its motion for summary judgment. On March 26, 2002, the plaintiff filed a reply in opposition to Sterling's supplemental brief.
Sterling moves for summary judgment as to the plaintiffs complaint on the ground that the Act bars the plaintiff from bringing this action.
Specifically, Sterling asserts that the plaintiff has failed to state a claim under the exception to the exclusivity rule. Sterling further contends that the plaintiff has failed to establish Sterling's intent to injure under the substantial certainty theory because the plaintiffs allegations are of failures on the part of the employer and such failures are insufficient to prove intentional misconduct. Therefore, Sterling concludes that the plaintiff cannot overcome the exclusivity bar. CT Page 6732
Sterling also asserts that the plaintiff had complete control over the circumstances surrounding his accident. It claims that the plaintiff was performing an operation of his own accord and not under any specific corporate directives to perform his job in a specific manner. Sterling further maintains that the plaintiffs claim cannot stand because he cannot show that any intentional tort was committed by an employee who can be deemed an alter ego of the employer.
In his opposition memorandum, the plaintiff argues that issues of material fact exist. The plaintiff also argues that Sterling is not entitled to judgment as a matter of law because an evidentiary foundation exists to support a jury's conclusion that Sterling was substantially certain that Sorban would be injured as a result of its actions. The plaintiff further argues that Sterling's actions and decisions regarding adopting safety policies, maintenance of the machine and failure to train were decisions made by alter ego's of the Sterling.
 DISCUSSION
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp., 233 Conn. 732, 751,660 A.2d 810 (1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) OSP, Inc. v. AetnaCasualty Surety Co., 256 Conn. 343, 351, 773 A.2d 906 (2001). The movant has the burden of demonstrating the absence of any genuine issue of material fact. Miller v. United Technologies Corp., supra,233 Conn. 751-52. "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Appleton v. Board ofEducation, 254 Conn. 205, 209, 757 A.2d 1059 (2000). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammerv. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699
(1990). "`Issue of fact' encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,379, 260 A.2d 596 (1969).
General Statutes § 31-284 (a) exempts employers from liability for CT Page 6733 civil damages "on account of personal injury sustained by an employee arising out of and in the course of his employment." "Arising out of and in the course of his employment" is defined as "an accidental injury happening to an employee . . . originating while he has been engaged in the line of his duty in the business or affairs of the employer upon the employer's premises. . . ." General Statutes § 31-275 (1). "Personal Injury" includes "accidental injury." General Statutes § 31-275 (16) (A).
The Connecticut Workers' Compensation Act is remedial and should be "construed generously to accomplish its purpose." Driscoll v. GeneralNutrition Corp., 252 Conn. 215, 220, 752 A.2d 1069 (2000). The exclusivity afforded by the Act "manifests a legislative policy decision that a limitation on remedies under tort law is an appropriate trade-off for the benefits provided by workers' compensation." Id., 220-21. This trade-off is one of the primary purposes of the Act. Id., 221. "[C]ase law on workers' compensation exclusivity reflects the proposition that these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." Id. Any ambiguities in the Act must be resolved to advance this remedial purpose. Id.
The exclusivity of the Worker's Compensation Act, however, is not without exception. In Suarez II, supra, 242 Conn. 255, the Supreme Court held that in order to escape the exclusivity of the Act, the "victim of an intentional injury must rely on the intended tort theory or the substantial certainty theory." Id., 280. "Under the former, the actor must have intended both the act itself and the injurious consequences of the act. Under the latter, the actor must have intended the act and have known that the injury was substantially certain to occur from the act." Id. "Substantial certainty centers on whether the employer believed the injury was substantially certain to follow the employer's acts or conduct. . . ." Id., 280. "[P]ermitting an employee to sue an employer for injuries intentionally caused to him constitutes a `narrow exception to the exclusivity of the act. . . .'" (Citations omitted.) Id., 278-79.
"Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case."Suarez I, supra, 229 Conn. 111. "Thus, whether the actor knows that the consequences of his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct, so that he or she should be treated by the law as though he or she in fact desired to produce the result, is a question of fact. . . ." Id.
Sterling asserts in support of its motion for summary judgment that the plaintiff has not pleaded sufficient facts or put forth any evidence to CT Page 6734 establish that the plaintiffs injury was done intentionally or was substantially certain to occur. While "summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of . . . intent . . . it remains, nevertheless, incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists. (Citations omitted; internal quotation marks omitted.) Connell v. Colwell,214 Conn. 242, 251, 571 A.2d 116 (1990).
The plaintiff started working for Sterling in 1988 as a machine operator. (Emil Sorban Deposition, May 19, 2000 [Sorban Deposition], p. 16.) He was trained on the Froriep Vertical Turrett Lathe ("machine") when he was first hired. (Sorban Deposition, p. 25.) On March 12, 1997, the plaintiff was assigned to work with the machine. (Emil Sorban Affidavit, October 20, 2001 [Sorban Affidavit], ¶ 6.) The plaintiff worked with the machine as instructed. (Sorban Affidavit, ¶ 8.) While working with the machine, the plaintiff noticed that something was wrong, as the tool head dropped further than it should. (Sorban Affidavit, ¶¶ 12 and 14; Sorban Deposition, pp. 61 and 62.) He sought the assistance of his supervisor, who performed the same operation on the machine as the plaintiff did and received the same result. (Sorban Affidavit, ¶¶ 16 and 18; Sorban Deposition, p. 65.) His supervisor advised him to "be careful." (Sorban Affidavit, ¶ 19; Sorban Deposition, p. 65.) The plaintiff proceeded to work. (Sorban Affidavit, ¶ 20.) While continuing to operate the machine, the plaintiff made three attempts to position the tool head of the machine. (Sorban Affidavit, ¶¶ 25 and 26.) The first and second attempts were unsuccessful, however, on the third attempt the machine "crashed." Id. The tool head came down and hit the piece on the rotating table causing a 100-pound, 42-inch diameter piece to be thrown from the machine and striking the plaintiff causing his injuries. (Sorban Affidavit, ¶ 26.) The plaintiff testified, in his opinion, a number of things that were wrong with the machine at the time of the accident. He asserted that, the brake for the tool head on the machine was defective, the table brake was not working, an electrical problem existed, there was not enough butt blocks for securing the pieces for the plaintiff to use and the guards that were on the machine were not reinforced or were defective. (Sorban Deposition, pp. 127, 129, 135, 137.)
The plaintiff states that his expert asserts that Sterling failed to adequately train the plaintiff to shut off the rotating table and failed to provide an adequate number of butt blocks to secure the piece. (Sorban Affidavit, p. 6, ¶ 32.) The expert testified that 1) the tool head improperly shifted when the tool was stopped in the rapid mode, 2) there was no interlock preventing rotation when the rapid travel mode was on, CT Page 6735 3) guarding was insufficient to contain the piece that was released and 4) the plaintiff was insufficiently instructed on the use of the machine and was inadequately trained. (Ojalvo Deposition, May 8, 2001 [Ojalvo Deposition], pp. 69, 73.) The plaintiff further asserts that his expert opined that the machine was defective in that the brakes did not work properly, causing the tool head to travel further than it should. (Sorban Affidavit, p. 6, ¶ 32.) In addition, the plaintiff and his expert assert that Sterling was on notice of the problems because of prior accidents. Id. The plaintiff attests that he reported the incident to OSHA. (Sorban Affidavit, ¶ 30.) The OSHA investigator concluded that Sterling had violated OSHA standards. (Sorban Affidavit, p. 5, ¶ 32.) Sterling has submitted evidence that indicates that the employer harbored no belief that its actions or conduct were substantially certain to cause the plaintiffs injuries.
The plaintiffs submissions may indicate that Sterling exhibited a heedless attitude toward worker safety, and while necessary, are not sufficient evidence from which one might reasonably and logically infer that the defendant believed its conduct was substantially certain to cause the plaintiffs injuries. Substantial certainty is equivalent to inevitability and is certitude beyond even high probability. See Stebbinsv. Doncasters, Inc., Superior Court, judicial district of Tolland, Docket No. 78908 (January 16, 2002, Sferrazza, J.). [A] "substantial certainty" is something greater than "a foreseeable risk which a reasonable man would avoid." Mingachos v. CBS, Inc., 196 Conn. 91, 103, 491 A.2d 368
(1985). Mingachos explains that a substantial certainty is even more than "a strong probability." Id., 103. Therefore, "[s]ince the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury." Suarez II, supra,242 Conn. 279. It is not the gravity of the employer's conduct which comes under scrutiny but rather the employer's subjective belief. See Id., 279. The evidence submitted by the plaintiff may amount to a failure to provide appropriate safety or protective measures but more is needed to overcome the exclusivity of the Act.
The substantial certainty standard requires a showing that the activity producing the injury to the employee was "intentional or deliberate and the resulting injury, from the standpoint of the employer, was substantially certain to result from the employer's acts or conduct."Ramos v. Branford, 63 Conn. App. 671, 680, 778 A.2d 972 (2001), see,Suarez v. Dickmont Plastics Corp., supra, 229 Conn. 109-10. "Failure to CT Page 6736 take affirmative remedial action, even if wrongful, does not demonstrate an affirmative intent to create a situation that causes personal injury."Melanson v. West Hartford, 61 Conn. App. 683, 689, cert. denied,256 Conn. 904, 767 A.2d 764 (2001). "Such delinquencies are not circumstantial evidence of a subjective belief that injury is substantially certain to occur." Stebbins v. Doncasters, Inc., supra, Superior Court, Docket No. 78908.
After careful review, the court concludes that the evidence submitted by the plaintiff provides no factual basis for a finding that Sterling held the belief that its course of action and inaction would lead, inevitably, to the plaintiffs injuries.
Therefore, this action is barred by the exclusivity of the Act. Accordingly, Sterling's motion for summary judgment is granted.
 ___________________ Cremins, J.