**Jennifer KILDUFF, Plaintiff,**

v.

**COSENTIAL, INC., et al., Defendants.**

**No. CIV. 3:02CV651 (PCD).**

United States District Court,
D. Connecticut.

Feb. 25, 2003.

█

---

**16**

---

Byran T. Carmody, Maya & Associates, Fairfield, CT, for Plaintiff.

Christopher M. Hodgson, Durant, Nichols, Houston, Hodgson & Cortese–Costa PC, Bridgeport, CT, for Defendants.

### RULINGS ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

DORSEY, District Judge.

Defendants move to dismiss and to strike various counts. For the reasons set forth herein, defendants' motion to dismiss is granted in part and the motion to strike is denied.

## I. BACKGROUND

In October, 2000, defendant Cosential, Inc. ("Cosential") hired plaintiff as executive assistant to a number of company officers including defendant Dan Cornish, Cosential's Chief Executive Officer. During her term of employment with Cosential, plaintiff was required to clean Cornish's office in which pornographic videotapes were stored. In January, 2001, Cosential hired defendant Dan Sorrentino as Chief Operations Officer. As plaintiff's supervisor, Sorrentino described her job responsibilities in terms of sexual acts and referred to plaintiff as "honey," "babe," "love" and "sweetheart," on certain occasions accompanying suggestive remarks with physical contact.

Plaintiff complained of the incidents to Ellen Louer, the office manager, who forwarded the complaints to Sara Wolter, human resources director. Although plaintiff was notified that Sorrentino would be directed to attend sensitivity training, the training was not completed. Over the next five months, Sorrentino intensified his conduct with plaintiff, making sexually suggestive remarks, commenting on an adult web site, describing sexual acts with his girlfriend, commenting that he would fire her if she cut her hair and referring to her as his wife. In July, 2001, plaintiff learned that Cosential was relocating to New York City and Sorrentino expressly requested that plaintiff continue her employment. On July 13, 2001, plaintiff resigned from her employment with Cosential because of the conduct.

Plaintiff complained of the conduct to the Connecticut Commission on Human Rights and opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC"). She was given a release of jurisdiction by the CHRO on March 28, 2002 and by the EEOC on April

1, 2002. She then filed the present complaint alleging that she had been subjected to a hostile work environment based on her sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 78 Stat. 253, 42 U.S.C. § 2000e *et seq.* and the Connecticut Fair Employment Practices Act ("CFEPA"), CONN. GEN. STAT. § 46a–58 *et. seq.* (Counts One and Two, respectively, as to Cosential), retaliation in violation of CFEPA, CONN. GEN. STAT. § 46a–60(a)(4) (Count Three as to Sorrentino), incitement of discrimination on the basis of sex (Count Four as to Cornish) and aiding and abetting such discrimination (Counts Five, Six and Seven as to Cornish) in violation of CFEPA, CONN. GEN. STAT. § 46a–60(a)(5), negligent supervision of Sorrentino (Counts Eight and Nine as to Cosential and Cornish, respectively), negligent retention of Sorrentino (Counts Ten and Eleven as to Cornish and Cosential, respectively), constructive discharge (Count Twelve as to Cosential), assault (Count Thirteen as to Sorrentino and Cosential), battery (Count Fourteen, Fifteen and Sixteen as to Sorrentino and Cosential), intentional infliction of emotional distress (Count Seventeen as to Sorrentino and Cosential, Count Eighteen as to Cosential, Count Nineteen as to Cornish) and negligent infliction of emotional distress (Count Twenty as to Cosential, Count Twenty–One as to Sorrentino).

## II. DISCUSSION

Defendants move to dismiss Counts Four, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty and Twenty–One for failure to state a claim.

### A. Motion to Dismiss Standard

A motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir.2001) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). A motion to dismiss must be decided on the facts as alleged in the complaint. *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 186 (2d Cir.2001). All allegations in the complaint are assumed to be true and are considered in the light most favorable to the non-movant. *Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387, 390 n. 1 (2d Cir. 2001).

### B. Violation of CFEPA as to Cornish (Count Four)

 Defendants argue that plaintiff does not allege that Cornish incited another to commit a discriminatory act and as such cannot establish a CFEPA violation. Plaintiff responds that the Count fairly alleges that Cornish incited Sorrentino to create a hostile work environment.

CONN. GEN. STAT. § 46a–60(a)(5) provides that it is a discriminatory practice "to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so." Plaintiff specifically alleges that Cornish incited Sorrentino sexual misconduct by viewing pornographic material with him in his private office. "Incite" is defined as "to move to a course of action: stir up: spur on: urge on … to bring into being: induce to exist or occur … incite may indicate both an initiating, a calling into being or action, and also a degree of prompting, furthering, encouraging, or nurturing of activity …." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1142 (1981). It is thus not enough that Cornish's peculiar behavior in his office presented Sorrentino with sexual ideas, but rather that it encouraged discriminatory

conduct toward female employees, thus establishing a hostile work environment.

Although Cornish's workplace conduct did nothing to dissuade Sorrentino, it cannot be considered as inciting a hostile work environment. Plaintiff does not allege that she raised any objection to Cornish's behavior, that Cornish expressly directed or encouraged Sorrentino's treatment of her, or that Cornish viewed pornography in her presence, which activities may have been interpreted by Sorrentino as ambivalence or encouragement of inappropriate conduct. She alleges she found pornographic videotapes and DVDs and believed such were viewed with Sorrentino. There is thus no allegation that Cornish fostered or directed a climate hostile toward his female employees.

If plaintiff is in fact arguing that the viewing of pornography at one's place of employment in a private office psychologically motivated Sorrentino to create a hostile work environment, and Cornish should have been aware of such fact, plaintiff provides no authority whatsoever for the proposition. The relation of pornography to sexual misconduct is a fertile source of debate, *compare Amatel v. Reno*, 156 F.3d 192, 198–99 (D.C.Cir.1998), *with id.* at 208–09 (Wald, J., dissenting) (discussing contrary views on the psychological effects of pornography), and the issue is sufficiently debatable to preclude its resolution today absent compelling evidence to that effect. It suffices to say that there is no authority, factual or legal, supporting the proposition that Cornish's conduct as alleged incited Sorrentino's conduct. Count Four is therefore dismissed.

### C. Constructive Discharge (Count Twelve)

■■ Defendants argue that constructive discharge is not an independent cause of action in Connecticut absent an identi-

fied violation of public policy in such discharge. A constructive discharge is effectively the legal equivalent of a discharge, *see Seery v. Yale–New Haven Hosp.*, 17 Conn.App. 532, 540, 554 A.2d 757 (1989), which is itself not actionable absent evidence of inappropriate conduct which effectuates the result. It is apparent, however, that plaintiff's claim is one of wrongful discharge as she alleges that "[s]aid discharge reflects Cosential's violation of public policies, including the public policy of having employers respect the employment rights of its employees." The invocation of a violation of public policy is the hallmark of a wrongful discharge claim, *see Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475, 427 A.2d 385 (1980) (sanctioning cause of action for wrongful discharge if reason for the discharge involves impropriety derived from some important violation of public policy), and will be reviewed as such.

■■ Defendants argue that available statutory remedies preclude an action for wrongful discharge. Plaintiff responds that should her statutory claims fail, she will be without a remedy for the alleged violations. The question is not whether plaintiff would be without means of redress under the circumstances, but rather whether any plaintiff would be without remedy for the violation of public policy. *See Leone v. Burns Int'l Sec. Servs.*, Civil No. B84–19(PCD), 1985 WL 8889 at *3 (D.Conn. Jan. 2, 1985). If the cause of action were case-specific, one could easily envision a callous disregard for procedural requirements such as exhaustion of claims through the EEOC or CHRO in light of a readily available, common law cause of action. If those claiming sex discrimination who are expressly excluded from statutory remedies may not avail themselves of a common law remedy, *see Thibodeau v. De-*

sign *Group One Architects, LLC,* 260 Conn. 691, 718, 802 A.2d 731 (2002) (identifying policy against discrimination but declining to establish cause of action for those whose employers are exempt by size from statutory prohibitions),[1] it would make little sense to create a cause of action for those whose claims fail either on the merits or for procedural noncompliance. "The body of our common law … serves to supplement the corpus of statutory enactments." *Id.* at 717, 802 A.2d 731 (internal quotation marks omitted). The wrongful discharge cause of action is not intended to be a catch-all for those who either procedurally or on the merits fail to establish a claim under existing discrimination statutes, and plaintiff has cited no authority to the contrary. Count Twelve is therefore dismissed.

### D. Vicarious Liability of Cosential for Assault, Battery and Intentional Infliction of Emotional Distress (Counts Thirteen Through Nineteen)

 Defendants argue that Cosential may not be held vicariously liable for Sorrentino's acts constituting assault, battery and intentional infliction of emotional distress claims against plaintiff. An employer may not be held liable for the intentional torts of its employees unless such torts occur within the scope of the employees' responsibilities and in furtherance of the employer's business. *See A–G Foods, Inc. v. Pepperidge Farm, Inc.,* 216 Conn. 200, 208, 579 A.2d 69 (1990). Whether an act occurs within the scope of one's employment is generally a question of fact, unless the digression from duty is so clear-cut as to become a question of law. *See id.* An employee acts within the scope of his or her employment when engaged in the service of the employer, which "is not synonymous with the phrase 'during the period covered by his [or her] employment.' " *Id.* at 209–10, 579 A.2d 69. The relevant question is "whether the [employee] on the occasion in question was engaged in a disobedient or unfaithful conducting of the [employer]'s business, or was engaged in an abandonment of the [employer]'s business" *Id.* at 210, 579 A.2d 69. Actions which further only the affairs of the employee, rather than the affairs of the employer, do not suffice to establish vicarious liability. *See id.* at 208, 579 A.2d 69.

Defendants rely on *Abate v. Circuit–Wise, Inc.,* 130 F.Supp.2d 341 (D.Conn. 2001), which dismissed a count on similar grounds, holding that a "defendant cannot be held vicariously liable in tort for the alleged sexual assault and battery." *Id.* at 348. This *per se* rule is not consistent with the fact-intensive inquiry dictated by Connecticut law. *See A–G Foods, Inc.,* 216 Conn. at 208, 579 A.2d 69. Plaintiff is not required by the liberal federal pleading standards to advance the motivations of Sorrentino for his conduct, nor is she obligated by pleading to define his responsibilities as within the terms of his employment or his employer's expectations of him.

 Vicarious liability has been established in the past for intentional torts under somewhat unusual circumstances. *See Pelletier v. Bilbiles,* 154 Conn. 544, 548–49, 227 A.2d 251 (1967) (finding vicarious liability when battery on customer followed employer's direction not to permit mischief

---

1. *Thibodeau* did not directly address whether one who satisfied the statutory requirements for a sex discrimination claim would be entitled to claim in the alternative for wrongful discharge. As *Thibodeau* involved a plaintiff who was without remedy under the discrimination statutes by virtue of an exemption applicable to her employer, *id.* at 693–94, 802 A.2d 731, there is no indication that the cause of action would be sanctioned in addition to the statutory cause of action.

in store); *Mullen v. Horton,* 46 Conn.App. 759, 765–66, 700 A.2d 1377 (1997) (finding summary judgment inappropriate on claim of vicarious liability for counselor's sexual relationship with plaintiff as sexual relationship could be construed as misguided attempt at counseling or unauthorized counseling method but not abandonment of employer's business). As a consequence, the *per se* rule proposed by defendants is less than sound, certainly in light of the citation in *Abate* to *Gutierrez v. Thorne,* 13 Conn.App. 493, 537 A.2d 527 (1988), in which the appeal arose on the procedural posture of a review of a ruling on a motion for summary judgment and the court concluded that the claim involving an employee's sexual assault bore "no connection to the [employer's] business" and provided "no facts before the court from which it could conclude that [employee] was furthering the [employer]'s interests," *id.* at 499, 537 A.2d 527.[2] Regardless of the nature of the intentional tort alleged in Counts Thirteen through Nineteen, it would be contrary to Connecticut law to adopt a *per se* rule against vicarious liability in cases involving sexual assault. Some factual inquiry is mandated by Connecticut law, and the matter will not be decided absent allegations describing details of Sorrentino's position and motives for his

conduct, motives that may extend beyond the obvious motive of self-gratification. The motion to dismiss is therefore denied as to the claims of vicarious liability.

### E. Exclusivity Provision of Workers' Compensation Act (Counts Thirteen Through Nineteen)

Defendants argue, citing *Driscoll v. General Nutrition Corp.,* 252 Conn. 215, 752 A.2d 1069 (2000), that the Counts against Cosential are barred by the exclusivity provision of Connecticut's Workers' Compensation Act, CONN. GEN. STAT. § 31–284(a).[3] Plaintiff responds that the claims are factually distinguishable.

In *Driscoll,* the plaintiff sought damages from her employer for negligent infliction of emotional distress resulting from "an invasive physical contact ... [which], as alleged in her own complaint, arose from or was caused by a physical injury" that occurred in the course of her employment. *Driscoll,* 252 Conn. at 225, 752 A.2d 1069. In concluding that the exclusivity provision precluded the claims, the court relied on the remarks of Representative Michael Lawlor, the proponent of the bill creating the provision, who stated that "a correction officer who was able to subdue a prisoner who had tried to assault her sexually, and thus had suffered no bodily harm, but who

---

**2.** It is noted that courts applying definitions of "scope of employment" applicable to other statutes or jurisdictions have arrived at contrary conclusions. *See, e.g., Faragher v. City of Boca Raton,* 524 U.S. 775, 794, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (analyzing Title VII claim and concluding that sexual harassment "consisting of unwelcome remarks and touching is motivated solely by individual desires and serves no purpose of the employer"). In light of the present allegations and Connecticut precedent, such questions are better addressed through a motion for summary judgment.

**3.** CONN. GEN. STAT. § 31–284(a) provides that "[a]n employer ... shall not be liable for any

action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment .... All rights and claims between an employer ... and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

subsequently suffered emotional distress" was entitled to compensation under the Act. *Id.* at 222, 752 A.2d 1069. In light of this history, Counts Fourteen, Fifteen and Sixteen, alleging specific instances of battery, which by definition requires physical contact,[4] may not be distinguished based on the invasiveness of the physical contact or questions as to whether the resulting emotional injury was caused by verbal or physical harassment, *see Abate*, 130 F.Supp.2d at 345. Those claims are dismissed as to Cosential.

■■■ When, however, emotional injury results from either verbal or a mixture of verbal and physical conduct, the preclusion would not necessarily apply. *See id.* Count Thirteen, alleging assault, which by definition requires no physical contact,[5] would not be compensable under the act as it involves no physical contact, thus no physical injury. *See Driscoll*, 252 Conn. at 222, 752 A.2d 1069. The same applies to Counts Seventeen through Nineteen, alleging vicarious liability for intentional infliction of emotional distress, as such allegations are broad enough to encompass both verbal and physical contact, *see Abate*, 130 F.Supp.2d at 345. If a "claim ... is not compensable under the act, [then it] is not barred by the exclusivity provisions of the act." *Perodeau v. City of Hartford*, 259 Conn. 729, 745, 792 A.2d 752 (2002).

The claims against Cosential alleging vicarious liability on Counts Fourteen, Fifteen and Sixteen are dismissed.

## F. Intentional Infliction of Emotional Distress (Counts Seventeen Through Nineteen)

Defendants argue that the conduct alleged is not sufficiently "extreme and outrageous" to state a claim for intentional infliction of emotional distress.

■■■ A claim of intentional infliction of emotional distress requires that plaintiff allege (1) defendant intended to inflict emotional distress, or knew or should have known that it was a likely result of its conduct, (2) the conduct was extreme and outrageous, (3) the conduct caused plaintiff's distress and (4) plaintiff's emotional distress was severe. *See DeLaurentis v. New Haven*, 220 Conn. 225, 266–67, 597 A.2d 807, 827–28 (1991). The "extreme and outrageous" standard requires that the conduct "exceed[ ] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Petyan v. Ellis*, 200 Conn. 243, 254 n. 5, 510 A.2d 1337 (1986). After recitation of allegations to an average representative of the community, such recitation would arouse the anger of the representative and cause him or her to exclaim "Outrageous!" *See Carrol v. Allstate Ins.*

---

4. Connecticut adopts its definition of battery from 1 RESTATEMENT (SECOND), TORTS § 13, which provides "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Alteiri v. Colasso*, 168 Conn. 329, 334 n. 3, 362 A.2d 798 (1975).

5. The Connecticut Supreme Court, quoting the *Restatement* with approval on the law of battery, has not yet provided a clear legal standard for assault, which tends to be subsumed in discussions of battery. *See* D. WRIGHT, J. FITZGERALD & W. ANKERMAN, CONNECTICUT LAW OF TORTS (3d Ed.1991) c. 2, § 6, p. 8. As such, it would likely adopt the Restatement definition of assault which provides, "An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." 1 RESTATEMENT (SECOND), TORTS § 21(1).

Co., 262 Conn. 433, 442, 815 A.2d 119, 125 (2003) (citing 1 RESTATEMENT (SECOND), TORTS § 46, cmt (d) (1965)); *Appleton v. Board of Educ.,* 254 Conn. 205, 210, 757 A.2d 1059 (2000). Conduct that is "merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id.* Whether conduct meets this standard requires determination by the court in the first instance. *See Collins v. Gulf Oil Corp.,* 605 F.Supp. 1519, 1522 (D.Conn. 1985). If reasonable people may differ as to whether the conduct is extreme or outrageous, the question is one for the jury. See *Appleton,* 254 Conn. at 210, 757 A.2d 1059.

■ As an initial matter, in light of the arguments of the parties as to the relationship of claims for intentional infliction of emotional distress and sexual harassment, conduct amounting to sexual harassment may give rise to a claim for intentional infliction of emotional distress. *See, e.g., Ponticelli v. Zurich Am. Ins. Group,* 16 F.Supp.2d 414, 440–41 (S.D.N.Y.1998) (applying analogous New York law and stating that sexual harassment context can give rise to such claim). The relevant question, however, is not whether conduct labeled as sexual harassment is extreme and outrageous, but rather whether the conduct alleged to underlie the sexual harassment claim is itself extreme and outrageous. *But see Rodrigue v. Hartford Fire Ins. Co.,* No. 3:97CV01226(GLG), 1997 WL 736525, at *4 (D.Conn. Nov. 24, 1997) (noting that claims of intentional infliction of emotional distress are commonly tried with sexual harassment claims). The coexistence of the two claims does not establish that sexual harassment is *per se* extreme and outrageous.

■ Plaintiff alleges that Sorrentino, her supervisor, used sexual analogies to describe her employment duties for the duration of her employment, subjected her to sexist language over an extended period of time, engaged in inappropriate touching, which increased in intensity in retaliation for her complaining of his conduct, and stated that he would discharge her if she cut her hair. The retaliatory nature of Sorrentino's conduct is entitled to some weight. *See Paroline v. Unisys Corp.,* 879 F.2d 100, 112, *vacated in part on other grounds,* 900 F.2d 27 (4th Cir.1990). The conduct is thus sufficiently objectionable that response of reasonable people may differ thus precluding dismissal of Count Seventeen.

■ Counts Eighteen and Nineteen allege intentional infliction of emotional distress by Cosential and Cornish, respectively, for failure to act in the face of a complaint lodged by plaintiff detailing Sorrentino's conduct. Characterized as either a failure "to respond" or "to prevent," or "choos[ing] to ignore," such conduct does not rise to the level of extreme and outrageous behavior, *see Abate,* 130 F.Supp.2d at 348; *Sowemimo v. D.A.O.R. Sec., Inc.,* 43 F.Supp.2d 477, 492 (S.D.N.Y.1999); *Ayers v. Wal–Mart Stores, Inc.,* 941 F.Supp. 1163, 1168 (M.D.Fla.1996), nor does it constitute a basis for vicarious liability for the acts of another. Plaintiff cites no authority, and this Court is aware of none, that would require a contrary conclusion based on the allegations herein. Counts Eighteen and Nineteen are dismissed.

## G. Negligent Infliction of Emotional Distress (Counts Twenty and Twenty–One)

■ Defendants argue that *Perodeau v. City of Hartford,* 259 Conn. 729, 745, 792 A.2d 752 (2002), precludes plaintiff's claims for negligent infliction of emotional distress arising in the course of employment. Plaintiff responds that *Perodeau* consti-

tutes a retroactive change in the substantive law and thus her claim of negligent infliction of emotional distress against Sorrentino in Count Twenty–One should stand. She further responds that her claim in Count Twenty is factually distinguishable from the limitation imposed by *Perodeau* as the claim here is against an employer rather than an employee.

■ Under Connecticut law, "an individual ... employee may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment." *Id.* at 762–63, 792 A.2d 752. The present claims arise out of conduct occurring within a continuing employment context and do not involve a termination. Plaintiff, apparently conceding the force of *Perodeau*, argues that prior to that decision termination was not required in the employment context for a claim of negligent infliction of emotional distress, and as such the decision constitutes a substantive change in the law applied retroactively to her claims. Plaintiff's argument is without merit.

■ As an initial matter, the law to which plaintiff cites for this proposition, *Roberts v. Caton*, 224 Conn. 483, 489–90, 619 A.2d 844 (1993), pertains to legislative acts effecting substantive changes to rights previously existing under the common law, not to judicial decision which constitute the common law. In any event, assuming *arguendo* there were some support for the application of the same principle to judicial decisions, *Perodeau* cannot be read as effecting a substantive change to the law. "Substantive rights are those that can be identified as existing between the parties at the time the cause of action accrued." *Id.* at 490, 619 A.2d 844. Plaintiff points to no authority for the proposition that an employee could, under the circumstances of her case, claim negligent infliction of emotional distress prior to *Perodeau*, which comes as no surprise as the Connecticut Supreme Court had not yet been confronted with the question. The mere fact that the decision issued after the actions complained of is of no significance, certainly not in light of the fact that this Court, when sitting in diversity, must predict, in the absence of a decision by the highest court of a state, how the particular question of state law would be decided by that court. *See Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399 (2d Cir. 2001). There is nothing to indicate that this Court would have concluded otherwise in the absence of *Perodeau. See Abate*, 130 F.Supp.2d at 346 (noting precedent from this district predating *Perodeau* holding that a "claim for negligent infliction of emotional distress arises only in the context of a termination"). Count Twenty–One is therefore dismissed.

■ Plaintiff further argues that a contrary decision is required as to the negligent infliction of emotional distress claim against Cosential, as it is the employer, not an employee. Such is not the case. In *Perodeau*, the conclusion rested on the policy implications for permitting a claim for negligent infliction of emotional distress. *See Perodeau*, at 769. The court considered various factors relevant to determinations of a legal duty as a matter of policy, *see Jaworski v. Kiernan*, 241 Conn. 399, 407, 696 A.2d 332 (1997), and decided against imposing a duty in the ongoing employment context. In so doing, the court acknowledged exposure to "conduct that transgress[es] the bounds of socially tolerable behavior,"*Perodeau*, at 769 (internal quotation marks omitted), but concluded that "public policies ... outweigh the interests of persons subject to such behavior in the workplace in being compensated for their emotional injuries," *id.*

24

(citation omitted). Such policy considerations included the chilling effect of litigation on the workplace environment and fear of spurious claims resulting from a legal standard more generous than that of sister states. *See id.* at 769–71. Contrary to plaintiff's argument, these policies are unaffected and would not require a different outcome if the defendant is an employer rather than an employee. Principles of agency and *respondeat superior*, as alleged in this very complaint, effectively making a supervisory employee the arm of the employer, refute such contention. Count Twenty is therefore dismissed.

## III. MOTION TO STRIKE

Defendants move to strike Counts Six and Seven as duplicative of Count Five. Defendants further move to dismiss Counts Fifteen and Sixteen as duplicative of Count Fourteen.

### A. Standard

Pursuant to Fed. R. Civ. P. 12(f), a "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In general court's are loathe to strike material in a complaint unless the presence of such material is prejudicial to the defendant. *See Puma v. Marriott*, 294 F.Supp. 1116, 1122 (D.C.Del.1969); *Weinberg v. Sinclair Refining Co.*, 48 F.Supp. 203, 206 (E.D.N.Y.1942);5A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1380 (3d ed.1998).

In Counts Five through Seven, plaintiff alleges that Cornish violated CFEPA, Conn. Gen. Stat. § 46a–60(a)(5) by aiding and abetting Sorrentino's harassment of plaintiff. Count Five alleges that Cornish, having actual knowledge of Sorrentino's harassment prior to plaintiff's filing a complaint and "failed to con-front Sorrentino on his past harassment of [plaintiff] and to prevent future harassment of her." Count Six alleges that Cornish, having actual or constructive knowledge of plaintiff's complaint to human resources, "failed to respond to [plaintiff's] complaints and failed to implement appropriate corrective measures with respect to Sorrentino's harassment." Count Seven alleges that Cornish, with actual or constructive knowledge of Sorrentino's harassment following her complaint, "failed to confront Sorrentino on his past harassment of [plaintiff] and to prevent future harassment of her."

The counts are subtle distinctions and will not be ordered stricken as each count adds some nuance to the allegations contained in the other two counts. Although the allegations are distinct, this Court would have serious reservations about presenting three separate counts alleging violations of the same statutory provision by the same individual defendant by what amounts to a continuing course of conduct. As striking the Counts would in effect dismiss the particular theory, plaintiff shall file an amended complaint in which the allegations are consolidated into a single Count.

Counts Fourteen through Sixteen allege three separate instances of harmful or offensive touching by Sorrentino. Although the three allegations are not redundant and there is thus no basis for ordering the Counts stricken, there is no apparent advantage to raising in three separate counts what could be done sufficiently with one. Whether identified as instances of harmful or offensive contact or separate claims of harmful or offensive contact, the order of damages will be the same. As such, plaintiff shall consolidate the allegations into a single count, but the motion to strike is denied.

## IV. CONCLUSION

Defendants' motion to dismiss (Doc. No. 4) is **granted in part**. Counts Four, Twelve, Eighteen, Nineteen, Twenty and Twenty–One are dismissed. Counts Fourteen, Fifteen and Sixteen are dismissed as to defendant Cosential, Inc. Defendants' motion to strike (Doc. No. 4) is **denied**. Plaintiff shall, however, file an amended complaint consolidating the counts raised in the motion to strike within thirty days of the date of this order.

SO ORDERED.