SHARON MELLO *v.* BIG Y FOODS, INC.
(SC 16909)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued April 15—officially released July 29, 2003

*Andrew J. Morrissey*, for the appellant (plaintiff).

*Andrew W. Bray*, for the appellee (defendant).

*Michael Soltis* and *Daniel Green* filed a brief for the Connecticut Business and Industry Association, Inc., as amicus curiae.

BORDEN, J. The two issues in this reservation are, first, whether the plaintiff's claim for permanent and significant scarring on her foot and ankle is barred by General Statutes § 31-284 (a), the exclusive remedy

provision of the Workers' Compensation Act (act),[1] and, second, if so, whether that bar violates article first, § 10, of the constitution of Connecticut.[2] We answer the first question in the affirmative and the second question in the negative.

The plaintiff, Sharon Mello, filed a workers' compensation claim against the defendant, Big Y Foods, Inc., her employer, for scarring to her foot and ankle. The workers' compensation commissioner (commissioner) denied compensability. The plaintiff then filed this plenary negligence action against the defendant for compensation for that scarring. The trial court reserved two questions of law governing the case.[3]

The parties stipulated to the following facts. The plaintiff was employed by the defendant. On July 3, 1998, during the course of and in the scope of her employment, the plaintiff sustained a compensable burn injury to her right foot and ankle, which later resulted in permanent and significant scarring. The plaintiff filed a claim pursuant to chapter 568 of the General Statutes seeking workers' compensation benefits, including a claim for benefits for permanent and significant scarring pursuant to General Statutes § 31-

---

[1] General Statutes § 31-284 (a) provides in relevant part: "All rights and claims between an employer . . . and employees . . . arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

[2] Article first, § 10, of the constitution of Connecticut provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

[3] The parties jointly petitioned the trial court for a reservation of the two questions of law. The trial court subsequently reserved the questions listed in the stipulation for the advice of the Appellate Court, and we transferred the reservation to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

308 (c).[4] The defendant accepted the compensability of the plaintiff's underlying injury to her foot by way of voluntary agreement, and paid for medical treatment and indemnity benefits for missed work, and for a 3 percent permanent disability to her right foot.[5] The defendant denied compensability, however, for the scarring to the plaintiff's foot and ankle. Thereafter, the commissioner found that there was no scarring to the plaintiff's face, head or neck, and that the scarring to her foot and ankle did not interfere with her ability to obtain or continue work.[6] Accordingly, the commissioner denied the plaintiff's claim for scarring to her foot and ankle.

The plaintiff then instituted this negligence action against the defendant seeking compensation for the

---

[4] General Statutes § 31-308 (c) provides in relevant part: "In addition to compensation for total or partial incapacity or for specific loss of a member or use of the function of a member of the body, the commissioner . . . may award compensation . . . for any permanent significant disfigurement of, or permanent significant scar on, (A) the face, head or neck, or (B) on any other area of the body which handicaps the employee in obtaining or continuing to work. The commissioner may not award compensation under this subsection when the disfigurement was caused solely by the loss of or the loss of use of a member of the body for which compensation is provided under subsection (b) of this section . . . . In making any award under this subsection, the commissioner shall consider (1) the location of the scar or disfigurement, (2) the size of the scar or disfigurement, (3) the visibility of the scar or disfigurement due to hyperpigmentation or depigmentation, whether hypertrophic or keloidal, (4) whether the scar or disfigurement causes a tonal or textural skin change, causes lack of symmetry of the affected area or results in noticeable bumps or depressions in the affected area, and (5) other relevant factors. Notwithstanding the provisions of this subsection, no compensation shall be awarded for any scar or disfigurement which is not located on (A) the face, head or neck, or (B) any other area of the body which handicaps the employee in obtaining or continuing to work. . . ."

[5] The record does not indicate whether the plaintiff's scarring was included within the assessment of a 3 percent permanent disability to her right foot.

[6] The plaintiff does not contend that her scarring interferes with her ability to work. Indeed, her claim is to the contrary: precisely *because* it does not come within either category of compensable scarring, she may sue in tort for losses.

scarring to her foot and ankle. Thereafter, at the request of the parties, the trial court ordered, pursuant to Practice Book § 73-1 (d),[7] reservation of the following two questions: (1) "Is the plaintiff's claim for permanent and significant scarring barred by the exclusive remedy provision of the [a]ct?"; and (2) "If so, does such bar violate [a]rticle [f]irst, [§] 10 of the Connecticut Constitution as applied to the facts of this case?" Both parties stipulated to the reservation and to the relevant facts. This reservation followed.

I

## THE PLAINTIFF'S CLAIM IS BARRED BY THE ACT'S EXCLUSIVITY PROVISIONS

We begin by addressing the first reserved question: whether the plaintiff's claim is barred by the exclusivity provision of the act. The plaintiff claims that, because the scarring to her foot and ankle is not compensable under the act, she is not barred from bringing this tort claim for that scarring. For this proposition, the plaintiff relies on this court's decision in *Perodeau* v. *Hartford*, 259 Conn. 729, 792 A.2d 752 (2002). The defendant argues, to the contrary, that the plaintiff's scarring arose from a compensable injury and thus her claim for scarring is barred by the act. We agree with the defendant.

"Our [act] indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . Section 31-284 (a), the exclusivity provision

---

[7] Practice Book § 73-1 (d) provides: "Upon the ordering of a reservation by the superior court, the clerk of the trial court shall send notice of the reservation to the appellate clerk and to all parties of record. The date of issuance of this notice shall be deemed the filing date of the appeal for purposes of the brief filing deadlines of Section 67-3. No entry fee shall be paid to the superior court and no costs shall be taxed in favor of any party. With the notice of reservation, the clerk of the trial court shall send to the appellate clerk two copies each of the stipulation, its accompanying joint docketing statement, the superior court's order of reservation, and the docket sheet (DS1) listing the counsel for all parties."

in the act, manifests a legislative policy decision that a limitation on remedies under tort law is an appropriate trade-off for the benefits provided by workers' compensation. That trade-off is part and parcel öf the remedial purpose of the act in its entirety. Accordingly, our case law on workers' compensation exclusivity reflects the proposition that these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation. . . . The purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering [its] purposes. . . . In [reservations] arising under workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act." (Citations omitted; internal quotation marks omitted.) *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 220–21, 752 A.2d 1069 (2000).

The act's exclusivity provision provides that "[a]ll rights and claims between an employer . . . and employees . . . arising out of personal injury or death sustained in the course of employment are abolished other than the rights and claims given by this chapter . . . ." General Statutes § 31-284 (a). Although the loss of the use of a foot at or above the ankle is compensable under subsection (b) of § 31-308, subsection (c) of § 31-308 limits compensation for significant scarring to "(A) the face, head or neck, or (B) any other area of the body which handicaps the employee in obtaining or continuing to work," and also specifically provides that "no compensation shall be awarded for any scar or disfigurement which is not located on (A) the face, head or neck, or (B) any other area of the body which handicaps the employee in obtaining or continuing to work."

The legislature added these subdivisions to subsection (c) of § 31-308 when it amended the act in 1993;

see Public Acts 1993, No. 93-228 (P.A. 93-228); and their addition substantially changed the compensability of scarring. Prior to P.A. 93-228, the commissioner had broad discretion under the act to award compensation for scarring on any part of the body that resulted from a work-related injury. The passage of P.A. 93-228 eliminated general discretion in the commissioner to award benefits for scarring and limited compensation benefits to those specifically defined in § 31-308 (c). The purpose of these amendments was to reduce the costs in the workers' compensation system by limiting certain benefits. See *Rayhall* v. *Akim Co.*, 263 Conn. 328, 348, 819 A.2d 803 (2003); *Barton* v. *Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 815, 730 A.2d 1149 (1999). This court has considered the legitimacy of such an aim in light of the state and federal constitutions and has concluded that cutting costs is a legitimate legislative interest. See *Barton* v. *Ducci Electrical Contractors, Inc.*, supra, 818.

Simply because the legislature has limited the degree or portion of compensability of one incident of a compensable injury—i.e., scarring—that does not mean that the portion of the incident deemed uncompensable automatically escapes the exclusivity provision of the act and becomes the permissible subject of a plenary action by the employee against her employer. Put another way, the legislature may limit the degree of compensability of an incident of a compensable injury without necessarily shifting the uncompensable portion of the incident into a tort claim against the employer. To hold otherwise would be inconsistent with the underlying trade-off implicit in the act and would frustrate the cost-saving purpose of P.A. 93-228. Furthermore, it would subject the employer to a double liability that the legislature did not contemplate: (1) workers' compensation benefits for the underlying compensable

injury to the foot; and (2) tort benefits for the scarring resulting from that same compensable injury.

We conclude that the plaintiff's claim that her scarring should be actionable against her employer outside the workers' compensation system is inconsistent with the act. In place of the trade-offs provided by the act would be a situation in which employees could seek compensation for those aspects of their compensable injuries that are specifically enumerated in the act, while seeking damages in tort against their employers for those aspects of their injuries not specifically enumerated. Such a result would, in many cases, including the present action, expose employers to liability under both the act and the common law. The costs and the lack of predictability that would result from such a rule would be unreasonable in light of the legislature's endeavor to reduce the costs of the system and in light of the public policy behind the act, which seeks to afford remedies quickly and efficiently to injured employees.

Thus, we view the plaintiff's claim in the present case as similar to the claim made by the plaintiff in *Driscoll* v. *General Nutrition Corp.*, supra, 252 Conn. 219. Just as the plaintiff in *Driscoll* was not permitted to unbundle her claim for emotional distress from her compensable physical injury so as to avoid the exclusive remedy provision of the act, the plaintiff in the present case may not unbundle her claim for scarring to her foot and ankle, for which the act specifically does not afford recovery, from her claim for her compensable foot injury, and from other scarring that *is* afforded compensability.

The plaintiff claims, however, that our ruling in *Perodeau* v. *Hartford*, supra, 259 Conn. 729, compels a different outcome. We disagree. The plaintiff in *Perodeau* was employed as a policeman by the city of Hartford. Id., 731. Following a disadvantageous transfer, the plain-

tiff filed a complaint with the commission on human rights and opportunities, claiming age and sex discrimination. Id., 732. Thereafter, he filed a complaint in the United States District Court for the District of Connecticut against certain fellow employees and superiors, seeking damages for negligent and intentional infliction of emotional distress resulting from alleged conduct by the defendants in retaliation for the administrative complaint. Id., 733. The District Court certified to this court the question of whether "individual employees may be held liable for negligent infliction of emotional distress for conduct arising in a continuing employment relationship." Id., 734.

This court answered the certified question in the negative. As a threshold issue, however, we first considered whether the exclusion of emotional distress claims from the compensability provisions of the act indicated an intent, on the part of the legislature, to preclude such claims all together. Id., 744–45. We held that the exclusivity provision of the act did not preclude the plaintiff's cause of action because "[w]hen an injury is expressly excluded from coverage under the act, the employe[e]'s right to pursue a common-law remedy for the injury is no longer compromised." (Internal quotation marks omitted.) Id., 747.

The plaintiff in the present case would have us read this language in *Perodeau* as support for the proposition that if any particular *aspect* of an injury is excluded from coverage, even if other aspects are not, then the exclusivity provision does not bar a common-law claim for the particular excluded aspect. In other words, under the plaintiff's suggested interpretation, although the underlying injury to her foot is compensable under the act and, therefore, would be unactionable, and although some bodily scarring *is* compensable, the exclusivity provision does not bar an action for her

scarring for which the act bars compensation. We disagree.

First, although broad, our language in *Perodeau* cannot be taken to mean that *any* form of injury that is not compensable under the act remains free to be the subject of an action by an employee against his employer. For example, the act, by its very nature and detailed schedules of compensation, always has excluded ordinary pain and suffering from the scheduled benefits. That exclusion always has been regarded as one of the trade-offs inherent in the workers' compensation system. Our language in *Perodeau* does not mean that an employee injured on the job remains free to sue his employer for the pain and suffering that is excluded from his workers' compensation benefits.

Second, the facts of *Perodeau* are distinguishable from those in the present case. The claimed injury in *Perodeau* was emotional distress arising, not from physical injury, but from the alleged harassment of superiors and coworkers. Id., 732. General Statutes § 31-293a provides that the act applies only "[i]f an employee . . . has a right to benefits or compensation under this chapter on account of injury . . . ." Furthermore, General Statutes § 31-275 (16) (B) provides in relevant part: " '[p]ersonal injury' or 'injury' shall not be construed to include . . . (ii) [a] mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease . . . ." When read in conjunction with one another, these statutes plainly state that emotional distress not arising from a physical injury is not compensable through workers' compensation. On the basis of this plain reading, this court concluded that, because no aspect of the plaintiff's claim was compensable under the act, the plaintiff was not barred by the exclusivity provision from instituting a common-law claim. *Perodeau* v. *Hartford,* supra, 259 Conn. 747.

In the present case, however, the plaintiff's underlying injury to her foot, *is* compensable under the act, and she has in fact received workers' compensation, including medical costs and lost wages, for that injury. In addition, the act does afford compensability for some scarring, albeit not the particular scarring suffered by the plaintiff. The fact that the scars *resulting* from the injury are not compensable does not remove the act's exclusivity bar or enable the plaintiff to bring a tort claim for the scarring alone. In other words, the plaintiff may not unbundle a noncompensable aspect of her underlying injury from the compensable aspects, and bring an action on the former while seeking workers' compensation for the latter. See *Driscoll* v. *General Nutrition Corp.*, supra, 252 Conn. 220. Whereas *Perodeau* concerned a single, noncompensable injury, the present case concerns a noncompensable aspect of a compensable injury. This distinction is crucial because allowing employees to unbundle their injuries would undermine the integrity and public purpose of the act.

In sum, the integrity of the workers' compensation system, as well as its public purposes, would be compromised if workers could unbundle aspects of their injuries and seek compensation under the act for some aspects while instituting civil actions for others. Contrary to the plaintiff's interpretation, *Perodeau* does not require such a result.

## II

### THE EXCLUSIVITY BAR, AS APPLIED TO THE FACTS OF THIS CASE, DOES NOT VIOLATE ARTICLE FIRST, § 10, OF THE CONNECTICUT CONSTITUTION

Having answered the first question in the affirmative, we now turn to the second question: whether the exclusivity provision, as applied to the facts of this case, violates article first, § 10, of the constitution of Connecticut. That is, is the act's exclusivity provision unconsti-

tutional, as applied to the facts of this case, because it precludes the plaintiff from exercising her preexisting common-law right to bring an action in negligence seeking damages for her scarring? We conclude that it is not.

Article first, § 10, of the constitution of Connecticut provides that "[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." "This provision appears in the constitution of 1818 and in its several revisions and reenactments, and has been referred to as the right to redress." *Gentile* v. *Altermatt*, 169 Conn. 267, 283, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). It is settled law that this provision restricts the power of the legislature to abolish a legal right existing at common law prior to 1818 without also establishing a "reasonable alternative to the enforcement of that right." *Binette* v. *Sabo*, 244 Conn. 23, 30, 710 A.2d 688 (1998); *Moore* v. *Ganim*, 233 Conn. 557, 573–74, 660 A.2d 742 (1995); *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 331, 627 A.2d 909 (1993); *Gentile* v. *Altermatt*, supra, 286–87. In order to be reasonable, however, an alternative need not be the *exact* equivalent of the abolished common-law right or its remedy. *Gentile* v. *Altermatt*, supra, 293. "Thus for each remedy or item of damage existing under the prior fault system, it is not required that that item be duplicated under the [alternative] act but that the bulk of remedies under the act be of such significance that a court is justified in viewing this legislation on the whole as a substitute, the benefits from which are sufficient to tolerate the removal of the prior cause of action." Id. In other words, in determining whether an alternative is reasonable, a court need only consider the aggregated benefits of the legislative alternative and assess whether those aggregated benefits reasonably

approximate the rights formerly available under the common law.

We have concluded that the act is a reasonable alternative to claims in tort for damages that existed at common law as actions for trespass on the case. *Daily* v. *New Britian Machine Co.*, 200 Conn. 562, 585, 512 A.2d 893 (1986). In *Daily*, the principal plaintiff claimed that the injury to his hand, sustained during routine maintenance of a precision machine, was actionable under a product liability theory; id.; despite the fact that he was entitled to and had been receiving benefits under the act. Id., 564. We disagreed and concluded, instead, that through "the aggregate benefits associated with the workers' compensation laws . . . the legislature provided a 'reasonable alternative' to workers having product liability claims and that [it], as a result, did not enact legislation violative of article first, § 10, of the Connecticut constitution." Id., 585.

Subsequent to *Daily*, in *Sharp* v. *Mitchell*, 209 Conn. 59, 66, 546 A.2d 846 (1988), we affirmed our holding that the act provided a reasonable alternative to common-law causes of action. Among the "extensive alternative benefits" cited by the court; id.; the aggregation of which approximates common-law tort actions, is the "immediate payment of medical bills" available through the act in exchange for the right to bring an action.[8] Id., 67.

---

[8] The plaintiff presents four additional arguments why the act does not provide a reasonable alternative to her common-law right to bring an action in negligence. Specifically, she claims that the act does not provide a reasonable alternative because: (1) her scarring is an injury to the skin, and because skin is not listed among the enumerated body members in § 31-308 (b), her injury is not compensable; (2) there is no independent right of recovery for "pain and suffering" under the act; (3) the act inhibits her ability freely to choose whichever medical treatment provider she sees fit; and (4) pursuant to General Statutes § 31-310 (b), an employee receives only 75 percent of her normal take-home pay and this discrepancy between her compensation and her regular pay renders the act unreasonable. To the extent that we understand them, none of these arguments is persuasive. The fact that the skin may not be a specifically covered bodily organ is of no moment because

We conclude, on the basis of the principles we articulated in *Daily* and *Sharp*, that the act's rights and remedies provide a reasonable alternative to the plaintiff's common-law right to bring a negligence action for damages resulting from her scarring. The plaintiff has been compensated, through the act, for all compensable losses associated with the injury she sustained to her foot. This compensation included medical costs, lost wages and a permanent disability payment of 3 percent. Under the terms of the act, the plaintiff received these benefits without the delay of filing an action and the burden of proving negligence. This is the exchange offered by the act; workers forego certain damages and remedies available to them under common law, but they gain a predictable, reliable, speedy and inexpensive means of obtaining compensation. As we held in *Daily* v. *New Britain Machine Co.*, supra, 200 Conn. 585, the rights and remedies available under a legislative " 'reasonable alternative' " need not equate, in every respect and detail, the superseded common-law rights and remedies. The aggregated benefits need only reasonably approximate the former right.

In sum, the act's exclusivity provision does not violate article first, § 10, of the constitution of Connecticut as applied to the facts of the present case. The plaintiff suffered a burn injury to her right foot for which she received prompt compensation under the act. Although the scarring that resulted from the burn injury is not compensable under the act, the plaintiff is barred by the act's exclusivity provision from bringing an action in tort for the scarring alone. This is permissible because the integrity and purpose of the act depend on

the act *does* afford compensation for *some* scarring, just not the particular scarring suffered by the plaintiff. We agree that there is no independent workers' compensation recovery for pain and suffering. As we have explained, that is part of the reasonable and constitutional trade-off effectuated by the act. The same may be said of the right to choose a medical provider and of the limitation on the amount of the plaintiff's take-home pay.

precluding workers from bringing claims in tort for certain incidents of injuries that are not covered under the act. This exclusion, however, does not violate the workers' right to redress, because, when viewed as a whole, the act provides them with a reasonable alternative to their prior common-law right to bring tort claims for injuries suffered in the course of their employment.

The first reserved question is answered "yes." The second reserved question is answered "no."

No costs will be taxed in this court to any party.

In this opinion the other justices concurred.