******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# HENRY LAVETTE III *v.* STANLEY
# BLACK & DECKER, INC.
## (AC 44465)

Bright, C. J., and Alexander and Lavine, Js.

*Syllabus*

The plaintiff employee sought to recover damages from the defendant employer for personal injuries he sustained while working for the defendant. In his complaint, the plaintiff, whose employment duties included painting, alleged, inter alia, that, although he was initially provided a respirator by another employee to prevent excessive inhalation of toxic chemicals from the paint he used, after about one month, D, the defendant's safety manager, informed the plaintiff that he was not authorized to use the respirator in the workplace. The plaintiff further alleged that the defendant had deliberately instructed him to continue to paint in known dangerous conditions, the defendant was aware that his injuries were substantially certain to result from its action, and it had engaged in wilful and serious misconduct. The defendant filed a motion to strike with prejudice on the ground that the plaintiff's claim was barred by the exclusivity provision (§ 31-284) of the Workers' Compensation Act (act) (§ 31-275 et seq.), which provides that the act is the exclusive remedy for employees injured in most instances, because the plaintiff failed to allege sufficient facts that D was the defendant's alter ego such that the defendant could be held liable for D's tortious conduct, and, alternatively, D's actions did not constitute intentional misconduct. The trial court granted the defendant's motion to strike, concluding that the plaintiff's complaint did not state a legally sufficient cause of action that fell within the intentional tort exception to the exclusivity provision of the act. In its memorandum of decision, the court concluded that the plaintiff did not allege the level of control required by the instrumentality rule or the unity of ownership interest required by the identity rule to disregard the defendant's corporate structure, but merely attempted to impose liability on the defendant for the alleged intentional acts of D, as a supervisor, on the basis of her apparent authority to act on the defendant's behalf. The court granted the motion to strike with prejudice, reasoning that the claim had been stricken multiple times and it was clear that the plaintiff was unable to cure the legal insufficiencies in the allegations. On the plaintiff's appeal to this court, *held* that the trial court properly granted the defendant's motion to strike with prejudice, the plaintiff having failed to plead that D was the defendant's alter ego such that D's alleged intentional torts could be attributed to the defendant to pierce the corporate veil and fall within the exception to the exclusivity provision of the act: the plaintiff's allegations simply established D's control was typical of any corporate safety manager and did not rise to the level of alter ego status to disregard the defendant's corporate structure, the plaintiff's allegations having failed to meet the stringent alter ego test, which requires that the corporation have no separate existence from the alter ego who controls and dominates the corporation's business affairs, as the plaintiff's allegation that D created a policy regarding the use of respirators did not establish the requisite level of control over the defendant; moreover, this court declined to review the plaintiff's argument that it should reconsider its jurisprudence regarding the alter ego exception to the act's exclusivity provision with respect to larger corporations, as the plaintiff failed to raise this argument before the trial court and raised it for the first time to this court in his reply brief; furthermore, although our Supreme Court in *Patel* v. *Flexo Converters, U.S.A., Inc.* (309 Conn. 52), reasoned that a plaintiff alleging an intentional tort directly committed or authorized by the employer was not required to prove that the actor was the employer's alter ego, this court declined to consider the applicability of that exception to the exclusivity provision of the act, as the plaintiff did not allege or argue that an intentional tort had been directly committed or authorized by the defendant.

Argued January 10–officially released June 28, 2022

Action to recover damages for personal injuries sustained by the plaintiff as a result of the defendant's alleged wilful misconduct, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Noble, J.*, granted the defendant's motion to strike with prejudice, and the plaintiff appealed to this court; thereafter, the court, *Noble, J.*, granted the plaintiff's motion for judgment and rendered judgment for the defendant, and the plaintiff filed an amended appeal. *Affirmed.*

*James F. Sullivan*, for the appellant (plaintiff).

*Nicholas N. Ouellette*, with whom, on the brief, was *Samuel N. Rosengren*, for the appellee (defendant).

*Opinion*

ALEXANDER, J. The plaintiff, Henry Lavette III, a former employee of the defendant, Stanley Black & Decker, Inc., appeals from the judgment of the trial court, rendered in favor of the defendant following the court's decision to strike count one of his fourth amended complaint with prejudice. On appeal, the plaintiff claims that the court improperly concluded that he had failed to allege sufficient facts to establish that his claim came within the intentional tort exception to the exclusivity provision of the Workers' Compensation Act (act), General Statutes § 31-275 et seq. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, as alleged in the plaintiff's fourth amended complaint and construed in the manner most favorable to sustaining its legal sufficiency,[1] and procedural history are relevant to our discussion. On or about September 2, 2014, the defendant hired the plaintiff as a "store attendant" and his essential employment duties included painting by brush and by spray. Initially, another employee provided the plaintiff with a respirator to prevent excessive inhalation of toxic chemicals from the paint. After approximately one month, however, Kim Derin, the defendant's safety manager, informed the plaintiff that he was not authorized to use the respirator in the workplace. The plaintiff then developed symptoms from his exposure to the paint, such as pain, nausea, diarrhea, and headaches. His symptoms worsened over time.

On or about July 9, 2015, the plaintiff informed Derin that "he was continuously getting headaches, feeling nauseous and experiencing shortness of breath from painting at work . . . ." Derin never responded to the plaintiff regarding his health issues. In January, 2016, the plaintiff reported that he was feeling "violently ill" but was reluctant to file a union grievance concerning the hazardous conditions due to a fear of being "targeted" by other employees and supervisors. The use of a different brand of paint did not relieve or ameliorate the plaintiff's symptoms.

On or about February 28, 2016, the plaintiff "became extremely ill including excessive vomiting and diarrhea." His symptoms did not improve and a few days later he experienced dizziness and cloudy vision. He was hospitalized overnight and returned to work a few days later. The plaintiff worked only one day between February 28, 2016, and March 17, 2016. The plaintiff filed a complaint with the federal Occupational Safety and Health Administration (OSHA),[2] which led to an investigation of the defendant and fines exceeding $35,000. The defendant terminated the plaintiff's employment on or about January 20, 2017.

The plaintiff commenced this action and, in his opera-

tive fourth amended complaint, alleged that the defendant "deliberately instructed the plaintiff to continue to paint in what [was known] to be dangerous conditions." He further claimed that the defendant was aware that his injuries were substantially certain to occur and engaged in wilful and serious misconduct. As a result of this misconduct, the plaintiff purportedly suffered "injuries including nausea, long-term headaches, sharp pain and cramps in his legs, excessive shortness of breath, diarrhea, and overall pain and fatigue in his body, [as well as] emotional distress and concerns for his overall well-being."[3]

On April 20, 2020, the defendant moved to strike count one of the plaintiff's fourth amended complaint with prejudice. In the attached memorandum of law, the defendant argued that the plaintiff had failed to allege sufficient facts that Derin was the "alter ego" of the defendant and, in the alternative, that her actions did not constitute intentional misconduct.[4] It further argued that without a sufficiently pleaded alter ego theory, the plaintiff's action was legally insufficient due to the exclusivity provision of the act,[5] and, therefore, the court should grant its motion to strike with prejudice. The plaintiff filed his objection to the defendant's motion to strike on May 26, 2020. The court conducted a remote hearing on September 28, 2020.

On December 8, 2020, the court issued a memorandum of decision granting the defendant's motion to strike count one of the plaintiff's fourth amended complaint with prejudice. At the outset of its analysis, the court summarized the arguments of the parties as follows: "The first issue to be addressed is whether the plaintiff alleges sufficient facts in the [fourth amended] complaint to subject the claim in count one to the intentional tort exception [to the exclusivity provision of the act found in] § 31-284 (a). The defendant argues that the plaintiff fails to allege sufficient facts to establish [Derin's] . . . alter ego status, [and] thus fails to bring the claim in count one within the ambit of the intentional tort exception. The plaintiff disagrees by pointing to the allegation that Derin had complete and final control over the removal of the plaintiff's respirator, [and] therefore, is the alter ego of the defendant with respect to this specific transaction, satisfying the instrumentality rule for piercing the corporate veil."

Citing to *Jett* v. *Dunlap*, 179 Conn. 215, 219, 425 A.2d 1263 (1979), the court first noted the limited nature of the alter ego intentional tort exception to the exclusivity provision of the act, which provides that, if an assailant employee is of such a rank in the corporation so as to be considered its alter ego, then the corporation may be assigned responsibility for the assailant employee's conduct. Next, the court, citing to *Patel* v. *Flexo Converters U.S.A.*, *Inc.*, 309 Conn. 52, 58, 68 A.3d 1162 (2013), observed that this stringent exception does not

impose liability on the corporation for the intentional acts of supervisors based on their apparent authority to act on behalf of their employer.

The court then summarized the relevant allegations in the fourth amended complaint. "[T]he plaintiff alleges that Derin had the authority to make and control policy for the defendant regarding safety procedures, and had the 'complete and final authority' with respect to the removal of the plaintiff's respirator. . . . The plaintiff further alleges that when Derin exercised her authority to remove the [plaintiff's respirator], she 'bound the defendant to her decision so that, at the time, the defendant had no separate mind, will or existence of its own.' " (Citations omitted.) With respect to the first allegation concerning Derin, the court concluded that this description established nothing more than the duties of any corporate safety manager. As to the latter allegation, the court determined that it lacked legal significance because a motion to strike does not admit legal conclusions or the accuracy or truth of the opinions stated. "The plaintiff alleges no specific fact[s] to substantiate his proposition that the defendant . . . ha[s] no separate mind, will or existence of its own with respect to the removal of the respirator. . . . Furthermore . . . it is not alleged . . . that Derin . . . has any ownership interest in the defendant or that the defendant does not properly maintain corporate formalities. . . . Overall, the plaintiff alleges neither the level of control required by the instrumentality rule nor the unity of ownership interest required by the identity rule, but merely attempts to impose liability on the employer for the intentional acts of supervisors on the basis of apparent authority to act on the employer's behalf." (Citations omitted; internal quotation marks omitted.) The court subsequently granted the motion to strike this count with prejudice because it had been stricken multiple times and "it is clear that the plaintiff cannot cure the legal insufficiencies in the allegations." Thereafter, the plaintiff filed a motion for judgment, which the court granted on January 8, 2021.[6] This appeal followed. Additional facts will be set forth as needed.

On appeal, the plaintiff claims that the court improperly granted the defendant's motion to strike count one of the fourth amended complaint with prejudice. Specifically, he argues that the facts pleaded "clearly [allege that] . . . Derin had the complete and final authority regarding whether the plaintiff could use a respirator while painting" and that these allegations were sufficient to satisfy the alter ego exception to the exclusivity provision of the act. The plaintiff further contends that the court erred in concluding that the allegations regarding Derin constituted a legal conclusion. We are not persuaded.

We begin our analysis by setting forth our standard of review and the relevant legal principles. "The stan-

dard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Sieranski* v. *TJC Esq, A Professional Services Corp.*, 203 Conn. App. 75, 81, 247 A.3d 201 (2021); see also *Karagozian* v. *USV Optical, Inc.*, 335 Conn. 426, 433–34, 238 A.3d 716 (2020). Additionally, we note that "[w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a [defendant's] motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Piccolo* v. *American Auto Sales, LLC*, 195 Conn. App. 486, 490, 225 A.3d 961 (2020).

Next, we set forth the relevant principles regarding our workers' compensation jurisprudence. "The purpose of the [act] is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer . . . . [The act] compromise[s] an employee's right to a [common-law] tort action for [work-related] injuries in return for relatively quick and certain compensation." (Internal quotation marks omitted.) *Dominguez* v. *New York Sports Club*, 198 Conn. App. 854, 859, 234 A.3d 1017 (2020); see also *Jones* v. *Connecticut Children's Medical Center Faculty Practice Plan*, 131 Conn. App. 415, 422–23, 28 A.3d 347 (2011).

General Statutes § 31-284 (a)[7] sets forth the relevant aspects of the exclusivity provision of the act, and provides that workers' compensation payments are the exclusive source of remedy against an injured employee's employer in most instances. *Mariano* v. *Hartland Building & Restoration Co.*, 168 Conn. App. 768, 778, 148 A.3d 229 (2016); see also *Motzer* v. *Haberli*, 300 Conn. 733, 743–44, 15 A.3d 1084 (2011). Specifically, our Supreme Court has stated that "where a worker's personal injury is covered by the act, statutory compensation is the sole remedy and recovery in common-law tort against the employer is barred." *Jett* v. *Dunlap*, supra, 179 Conn. 217; see also *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 221, 752 A.2d 1069 (2000).

There is, however, an exception to the act's exclusiv-

ity. If a plaintiff can demonstrate that his injury was the result of an intentional tort[8] that was committed by his employer, then the corporation is subject to common-law tort liability. See *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 274, 698 A.2d 838 (1997); *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 532–33, 494 A.2d 555 (1985); *Jett* v. *Dunlap*, supra, 179 Conn. 217–18.

Our Supreme Court has recognized two different ways for an employee to allege and prove an intentional tort. In *Jett* v. *Dunlap*, supra, 179 Conn. 218, our Supreme Court first explained that an employer cannot rely upon the exclusivity of the act if it intentionally directed or authorized its employee to strike another employee. Next, after noting a distinction between an assault directly committed or authorized by an employer and an unauthorized assault committed by an employee, the court turned to the question of whether that employee was the alter ego of the corporation such that the employer should be held liable for the employee's tortious conduct. Id., 218–19. The court in *Jett* reasoned that if the assailant is of such a rank in the corporation so as to be deemed its alter ego, under standards governing disregard of the corporate entity, it was appropriate for the corporation to bear reasonability for that actor's unauthorized conduct. Id., 219. *Jett* did not, however, extend corporate liability for the conduct of an assailant to mere supervisors or foremen. Id. In summary, the court in *Jett* concluded: "If the assailant can be identified as the alter ego of the corporation, or the corporation has directed or authorized the assault, then the corporation may be liable in common-law tort; if the assailant is only another employee who cannot be so identified, then the strict liability remedies provided by the [act] are exclusive and cannot be supplemented with common-law damages." Id.

Our Supreme Court subsequently revisited this exception to the act's exclusivity provision in *Suarez* v. *Dickmont Plastics Corp.*, supra, 242 Conn. 255. In that case, the trial court had instructed the jury that the intentional actions of an employee could be attributed to the corporate defendant if that employee had apparent authority to act on the corporation's behalf or was its alter ego. Id., 272. On appeal, our Supreme Court reviewed and applied the analysis from *Jett* v. *Dunlap*, supra, 197 Conn. 218–19, and concluded that the assailant must be of such a rank in the corporation to be deemed its alter ego under the standard governing the disregard of the corporate entity. *Suarez* v. *Dickmont Plastics Corp.*, supra, 273–75. It further noted that to overcome the act's exclusivity provision, both the actions producing the injury and the resulting actions must have been intentional or substantially certain to have occurred. Id., 280.

In the present case, the plaintiff consistently has relied on its allegations that Derin acted as the alter ego of the defendant and committed an intentional tort. Consequently, we turn to our Supreme Court's most recent discussion of that specific exception to the act in *Patel* v. *Flexo Converters, U.S.A., Inc.*, supra, 309 Conn. 52. In *Patel*, the employee challenged the summary judgment rendered in favor of the employer with respect to his action to recover damages for personal injuries that resulted from the alleged intentional misconduct by a fellow employee. Id., 53–54. The dispositive issue in *Patel* was whether the trial court properly concluded that no genuine issue of material fact existed as to whether the fellow employee's position as a night supervisor made him the defendant's alter ego. Id., 55–57.

Our Supreme Court, citing to *Jett* v. *Dunlap*, supra, 179 Conn. App. 219, iterated the narrow exception to the exclusivity provision of the act for intentional torts committed by the alter ego of a corporation. *Patel* v. *Flexo Converters, U.S.A., Inc.*, supra, 309 Conn. 57. It emphasized that this exception does not apply to supervisory employees but only an alter ego of the corporation. Id., 57–58. Our Supreme Court explained: "*The alter ego test is stringent.* The supervisory employee alleged to have intentionally injured the plaintiff must be the employer's alter ego under the standards governing disregard of the corporate entity . . . a test corresponding to the requirements for piercing the corporate veil. The concept of piercing the corporate veil is equitable in nature. . . . No hard and fast rule . . . as to the conditions under which the entity may be disregarded can be stated as they vary according to the circumstances of each case. . . . *The standard requires that the corporation, functionally speaking, have no separate existence from the alter ego who controls and dominates the corporation's affairs*. The alter ego test is therefore incompatible with imposing liability on the employer for the intentional acts of supervisors on the basis of apparent authority to act on the employer's behalf. . . .

"The alter ego test is functional, and a supervisory employee's title is not dispositive of the ultimate question of whether the employee meets the standards governing disregard of the corporate entity . . . . In the context of a small family owned corporation, for example, a supervisor could sufficiently dominate and control the corporation so as to justify liability under the alter ego theory." (Citations omitted; emphasis added; footnotes omitted; internal quotation marks omitted.) Id., 58–60; see also *Melanson* v. *West Hartford*, 61 Conn. App. 683, 690–91, 767 A.2d 764, cert. denied, 256 Conn. 904, 772 A.2d 995 (2001). The court also observed that, as noted in *Jett* v. *Dunlap*, supra, 179 Conn. 218, if a plaintiff alleged an intentional tort directly committed

or authorized by the employer, he or she would not be required to prove that the actor was the employer's alter ego. *Patel* v. *Flexco Converters U.S.A., Inc.*, supra, 58 n.6.

Our Supreme Court then described the two methods for determining whether a defendant's corporate structure has been disregarded: the instrumentality rule and the identity rule. Id., 59 n.7. "The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of [the] plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . . The identity rule has been stated as follows: If [the] plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Internal quotation marks omitted.) Id.; see also *Hersey* v. *Lonrho, Inc.*, 73 Conn. App. 78, 87, 807 A.2d 1009 (2002).

With this background in mind, we consider the extensive procedural history in this case regarding the plaintiff's intentional tort claim to determine if the plaintiff pleaded sufficient facts to come within the intentional tort committed by an alter ego exception to the exclusivity provision of the act. The plaintiff commenced this action on March 20, 2017. In count one of his complaint, the plaintiff alleged that the defendant deliberately had instructed him to continue to paint in what it knew to be dangerous conditions. He further claimed that the defendant was aware that his "injuries were substantially certain to flow from [its] actions" and had "engaged in wilful and serious misconduct." As a result of this misconduct, the plaintiff purportedly suffered "injuries including nausea, long-term headaches, sharp pain and cramps in his legs, excessive shortness of breath, diarrhea, and overall pain and fatigue in his body."[9]

On November 5, 2018, the defendant moved to strike counts one and three of the amended complaint.[10] With respect to count one of the amended complaint, the defendant argued that the plaintiff failed to allege that the employees controlled and dominated the corporate

entity so as to constitute its alter ego. On November 30, 2018, the plaintiff filed a revised amended complaint.[11] In anticipation of the filing of another amended complaint, the court, on January 2, 2019, declined to rule on the defendant's motion to strike count one of the amended complaint, and granted the defendant's motion to strike with respect to count three.

On February 7, 2019, the plaintiff filed a second revised complaint. On March 21, 2019, the defendant filed a motion to strike count one of the plaintiff's second revised complaint. In its accompanying memorandum of law, the defendant argued, inter alia, that the plaintiff had failed to allege sufficient facts that the employees identified in the second revised complaint controlled and dominated the defendant's business affairs so as to be deemed its alter ego. On April 18, 2019, the plaintiff filed his memorandum of law in opposition to the defendant's motion to strike.[12] On September 17, 2019, the court issued a memorandum of decision granting the defendant's motion to strike. The court noted that the plaintiff had failed to "cite any facts to buttress the claim that Derin . . . [was] the alter ego" of the defendant or recite the elements of the tests used to determine whether the defendant's corporate structure had been disregarded.

On October 2, 2019, the plaintiff filed his third amended complaint. In that pleading, the plaintiff alleged that Derin, as the defendant's safety manager, held "a title of such rank as it is deemed as an alter ego of the defendant, and . . . Derin is so situated in the corporate structure as to bind the corporation." The defendant responded thirteen days later by filing a motion for judgment pursuant to Practice Book § 10-44,[13] or, in the alternative, to strike count one of the third amended complaint. The defendant argued that the plaintiff had not cured the pleading deficiencies in the second revised complaint that had been stricken by the court. In its accompanying memorandum of law, the defendant argued that the plaintiff still had failed to allege sufficient facts to satisfy either the instrumentality rule or the identity rule despite the inclusion of the job responsibilities of Derin and the assertion that her position was of such a rank so as to bind the defendant and to deem her as its alter ego.

The plaintiff filed his objection to the motion for judgment and the motion to strike on October 31, 2019. Therein, he maintained that sufficient facts had been pleaded to satisfy the instrumentality rule and, therefore, Derin was the alter ego of the defendant. He further argued that this pleading was sufficient to establish that the defendant, through its alter ego, intentionally acted in a way to cause the plaintiff's injuries and that those injuries were substantially certain to result from the defendant's conduct.

On March 5, 2020, the court issued an order indicating

that it was granting the defendant's October 15, 2019 motion, which it treated as a motion to strike. In recounting the procedural history, the court commented that a prior pleading had been stricken because the plaintiff's bald assertion regarding Derin as an alter ego of the defendant was insufficient to bring his claim within the exception to the act's exclusivity provision. With respect to the third amended complaint, which added a description of employment duties for Derin's position, the court agreed with the defendant that despite these additions, the plaintiff had failed to set forth sufficient allegations to advance a claim for alter ego status pursuant to either the instrumentality rule or the identity rule. The court issued an order stating: "The new allegations fail to allege facts sufficient to implicate alter ego status, and therefore the motion to strike the first count is granted."

On April 3, 2020, the plaintiff filed his fourth amended complaint. In that pleading, the plaintiff alleged the following: "Derin . . . had the complete and final authority regarding whether the plaintiff could use a respirator while painting. . . . Derin exercised her authority and judgment when she took the respirator from the plaintiff. . . . In so exercising her authority and judgment . . . Derin bound the defendant to her decision so that, at the time, the defendant had no separate mind, will or existence of its own. . . . Derin was the safety manager of the [defendant] . . . . This is a title of such rank as it is deemed as an alter ego of the defendant, and . . . Derin is so situated in the corporate structure as to bind the corporation. . . . Derin, as the defendant's safey manager, had the authority to make policy for the defendant regarding safety procedures. . . . Derin had the authority to control policy for the defendant regarding safety procedures."

The defendant moved to strike the fourth amended complaint with prejudice. The defendant again contended that the pleading was legally insufficient to bring this claim within the alter ego exception to the exclusivity provision of the act. The court agreed with the defendant and granted the motion to strike with prejudice.

We conclude that the trial court properly determined that the plaintiff's allegations established nothing more than that Derin exercised the control typical of any corporate safety manager and did not rise to the level of alter ego status. The plaintiff failed to allege "complete domination" over the defendant, as required by the instrumentality rule. See *Patel* v. *Flexo Converters, U.S.A., Inc.*, supra, 309 Conn. 59 n.7. Additionally, the allegations in the fourth amended complaint failed to establish the type of unity of interest and ownership between Derin and the defendant to satisfy the identity test. See id. We note that the "alter ego test is stringent" and that the "standard requires that the corporation, functionally speaking, have no separate existence from

the alter ego who controls and dominates the corporation's affairs." Id., 58–59. The allegation that Derin created a policy regarding the use of respirators did not establish the level of control over the defendant necessary to pierce the corporate veil and come within the alter ego exception to the act's exclusivity provision, which was announced in *Jett* v. *Dunlap*, supra, 179 Conn. 219, and further explained in *Patel*.

We also agree with the trial court that the plaintiff's bald assertion that the defendant lacked a separate mind, will or existence from Derin constituted a legal conclusion, and, therefore, lacked legal significance. "A motion to strike does not admit legal conclusions." (Internal quotation marks omitted.) *Hirsch* v. *Woermer*, 184 Conn. App. 583, 588, 195 A.3d 1182, cert. denied, 330 Conn. 938, 195 A.3d 384 (2018); *Cadle Co.* v. *D'Addario*, 131 Conn. App. 223, 230, 26 A.3d 682 (2011); see also *Heyward* v. *Judicial Dept.*, 178 Conn. App. 757, 762, 176 A.3d 1234 (2017) (motion to strike properly granted if complaint alleges mere conclusions of law unsupported by facts alleged). For these reasons, we conclude that the trial court properly granted the defendant's motion to strike the plaintiff's fourth amended complaint with prejudice.

In an attempt to avoid this result, the plaintiff has raised two arguments which we conclude are not properly before this court. First, in his reply brief and at oral argument, the plaintiff claimed that we should reconsider our jurisprudence regarding the alter ego exception to the workers' compensation exclusivity provision, particularly with respect to larger corporations. We decline to consider this argument because it was not raised before the trial court; see *Taylor* v. *Pollner*, 210 Conn. App. 340, 345, 270 A.3d 213 (2022); and was raised for the first time to this court in the plaintiff's reply brief. See *Ostapowicz* v. *Wisniewski*, 210 Conn. App. 401, 413–14 n.9, 270 A.3d 145 (2022) (declining to review claim raised for first time in reply brief). Additionally, as an intermediate appellate court, we are bound to follow the controlling precedent from our Supreme Court. *Onofrio* v. *Mineri*, 207 Conn. App. 630, 645 n.4, 263 A.3d 857 (2021) (noting that this court is unable to modify Supreme Court precedent). For these reasons, we decline to consider the plaintiff's argument that we should reconsider our law pertaining to the alter ego exception.

Second, at oral argument before this court, a discussion regarding certain language from *Patel* v. *Flexo Converters, U.S.A., Inc.*, supra, 309 Conn. 58 n.6, occurred. This footnote in *Patel* describes an additional way for a plaintiff to avoid the exclusive nature of the act. Specifically, it states: "We note that a plaintiff alleging an intentional tort directly committed or authorized by the employer need not prove that the actor was the employer's alter ego. *Jett* v. *Dunlap*, supra, 179 Conn.

218." (Internal quotation marks omitted.) *Patel* v. *Flexo Converters*, *U.S.A.*, *Inc.*, supra, 58 n.6. During argument, the plaintiff's counsel appeared to take the position that this alternative means to bypass the exclusivity provision of the act provided an additional pathway to reverse the granting of the motion to strike the fourth amended complaint with prejudice.

After our careful review of the record, as demonstrated by the extensive review of the plaintiff's pleadings from his initial complaint to the fourth amended complaint that was stricken with prejudice, we conclude that the plaintiff did not allege or argue that an intentional tort had been directly committed or authorized by the defendant. Specifically, we note that in its September 17, 2019 memorandum of decision granting the defendant's motion to strike the first count of the plaintiff's revised complaint, the court expressly stated that "[t]he *alter ego status of Derin . . . was the only basis on which the plaintiff asserted the intentional tort exception to the workers' compensation exclusivity.*" (Emphasis added.) The allegations set forth in the plaintiff's third and fourth amended complaints did not advance a claim of an intentional tort directly committed or authorized by the defendant. "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Citation omitted; internal quotation marks omitted.) *Avoletta* v. *Torrington*, 133 Conn. App. 215, 223 n.8, 34 A.3d 445 (2012).

Furthermore, the plaintiff failed to adequately brief the issue of whether an intentional tort had been directly committed or authorized by the defendant. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *Robb* v. *Connecticut Board of Veterinary Medicine*, 204 Conn. App. 595, 611, 254 A.3d 915, cert. denied, 338 Conn. 911, 259 A.3d 654 (2021). For these reasons, we decline to consider the applicability of the exception to the exclusivity provision of the act set forth in *Patel* v. *Flexco Converters U.S.A.*, *Inc.*, supra, 309 Conn. 58 n.6.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See, e.g., *Doe* v. *Cochran*, 332 Conn. 325, 328, 210 A.3d 469 (2019); *Sullivan* v. *Lake Compounce Theme Park*, 277 Conn. 113, 117, 889 A.2d

810 (2006).

[2] "OSHA is designed to impose duties upon employers to ensure worksite safety for the benefit of their own employees as well as any other employees working on or at any worksite that is under the employer's control." *Bouchard* v. *Deep River*, 155 Conn. App. 490, 497–98, 110 A.3d 484 (2015); see also 29 U.S.C. § 651 et seq. (2018).

[3] Count two of the plaintiff's fourth amended complaint set forth a claim of unlawful retaliation. General Statutes § 31-51q provides in relevant part: "Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages." The trial court presumed that the plaintiff's multiple references in the fourth amended complaint to General Statutes § 31-51g constituted a typographical error.

The defendant objected to count two of the fourth amended complaint on the grounds that this cause of action was raised for the first time and was "exceedingly and unjustifiably untimely and . . . would be barred by the statute of limitations." The court sustained the defendant's objection to the plaintiff's request for leave to add count two to the fourth amended complaint, and the plaintiff has not challenged that ruling in this appeal.

[4] In the proceedings before the trial court, the plaintiff also alleged that another employee, Kristen Sabatino, the defendant's human resources director, acted as its alter ego because she had the authority to "make policy and implement strategies for the defendant regarding training, development, safety and health." The court concluded that the plaintiff's allegations against Sabatino were legally insufficient, and the plaintiff has not challenged this aspect of the court's ruling on appeal. Accordingly, we limit our discussion to the plaintiff's allegations regarding Derin.

[5] See General Statutes § 31-284; *Mello* v. *Big Y Foods, Inc.*, 265 Conn. 21, 25–26, 826 A.2d 1117 (2003).

[6] As a general rule, "[a]fter a court has granted a motion to strike, the plaintiff may either amend his pleading [pursuant to Practice Book § 10-44] or, on the rendering of judgment, file an appeal. . . . The choices are mutually exclusive [as] [t]he filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading." (Citation omitted; internal quotation marks omitted.) *St. Denis* v. *de Toledo*, 90 Conn. App. 690, 693–94, 879 A.2d 503, cert. denied, 276 Conn. 907, 884 A.2d 1028 (2005); see also *Sempey* v. *Stamford Hospital*, 194 Conn. App. 505, 511–12, 221 A.3d 839 (2019). In the present case, however, the plaintiff was not permitted to amend his fourth amended complaint because the court had granted the defendant's motion to strike with prejudice. See, e.g., *DeCorso* v. *Calderaro*, 118 Conn. App. 617, 624, 985 A.2d 349 (2009), cert. denied, 295 Conn. 919, 991 A.2d 564 (2010).

[7] General Statutes § 31-284 (a) provides: "*An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment* or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. *All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter*, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation." (Emphasis added.)

[8] "[I]n *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 639 A.2d 507 (1994) . . . and *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 698 A.2d 838 (1997) . . . the court expanded the intentional tort exception to the exclusivity provision to include circumstances in which either . . . the

employer actually intended to injure the plaintiff (actual intent standard) or . . . the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur (substantial certainty standard)." (Internal quotation marks omitted.) *Binkowski* v. *Board of Education*, 180 Conn. App. 580, 586, 184 A.3d 279 (2018); see also *Lucenti* v. *Laviero*, 327 Conn. 764, 778–79, 176 A.3d 1 (2018); *Stebbins* v. *Doncasters, Inc.*, 263 Conn. 231, 233, 819 A.2d 287 (2003).

[9] The plaintiff's complaint also included a second count claiming wrongful discharge in violation of § 31-51m in which he alleged that he was terminated for exercising his first amendment rights when he reported the defendant to OSHA. On October 4, 2018, the plaintiff filed a request to amend the complaint to add a second wrongful discharge claim. Specifically, he sought to include an additional count alleging that he had been terminated "in retaliation for raising issues that derive from the law that support important public polices about health and safety in the workplace." The court overruled the defendant's objection and permitted the plaintiff to amend his complaint.

[10] See footnote 9 of this opinion.

[11] The statement of facts section and count one of the revised amended complaint essentially mirrored those of the amended complaint.

[12] While the defendant's motion to strike the second revised complaint was pending, the plaintiff filed a request to file a third revised complaint on June 10, 2019. The proposed third revised complaint included, inter alia, language regarding Derin and her employment role for the defendant. The defendant objected to the plaintiff's request and, on July 1, 2019, the court sustained the defendant's objection.

[13] Practice Book § 10-44 provides in relevant part: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint, or any count in a complaint, counterclaim or cross complaint has been stricken, and the party whose pleading or a count thereof has been so stricken fails to file a new pleading within that fifteen day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint, counterclaim or cross complaint, or count thereof. . . ."

---